## SOUTHERN RAILWAY COMPANY *v.* HILL.

1. In a suit by the administrator of a deceased employee against a railway company, to recover damages for the alleged wrongful death of the employee, brought under the act of Congress of April 22, 1908, commonly known as the employer's liability act, it is not error to instruct the jury that if both the plaintiff's intestate and the railway company by their negligence contributed to the former's death, the plaintiff nevertheless would be entitled to recover damages, though the damages would be diminished in proportion to the negligence attributable to the decedent.

2. The measure of damages in an action founded upon the act of Congress, known as the employer's liability act, brought by the administrator of a deceased employee for the benefit of the employee's widow and children, is the pecuniary loss which they sustain. The charge to the jury on the measure of damages was erroneous, in that a recovery was permitted, not only for the pecuniary loss sustained by the wife and

children, but also for an excess of the decedent's earnings during his expectancy of life.

3. A charge that the care required by the defendant and its employees in the particulars in which they are charged to have been negligent is ordinary care, and that ordinary care is that care which a prudent railway company, acting through itself or its employees or agents, would exercise under the same or similar circumstances, contains an inaccurate definition of ordinary care.

4. There was no error in declining the request to charge relating to the duty of the plaintiff's intestate in approaching the switch from which his train was derailed, where a clear hand signal was given as against a fixed signal.

5. Where the general charge covers all the substantial issues of the case, it is not ground for a new trial that the court omits to charge the law relating to certain specific evidence, when no appropriate written request is made for such an instruction.

6. The testimony to which objection was taken illustrated the issue made by the pleadings, that the device for turning the switches was defective in construction, and also was in such disrepair as to be unreliable in turning the switch.

**FEBRUARY 28, 1913.**

Action for damages. Before Judge Bell. Fulton superior court. January 29, 1912.

*McDaniel & Black* and *E. A. Neely,* for plaintiff in error.

*Reuben R. Arnold,* contra.

BECK, J. The action was by Lillian D. Hill as administratrix of William H. Hill, against the Southern Railway Company, to recover damages for the alleged wrongful death of her intestate, who at the time of his death was an engineer in the service of the defendant. The petition contained three counts, and the case was tried on that count which predicated liability on the act of Congress of 1908 (35 Stat. 65), commonly known as the Federal employer's liability act. The deceased employee left a widow and three children. He was instantly killed, and his death was caused by his engine being overturned by a derail switch, as a result of the alleged negligence of the defendant. A verdict was returned for the plaintiff, and the court refused to set it aside on motion for new trial made by the defendant.

1. Exception is taken to certain instructions relating to the consequences of mutual negligence on the part of the plaintiff's intestate and the defendant. The court charged broadly that if both the plaintiff's intestate and the railway company by their negligence contributed to the former's death, the plaintiff nevertheless would be entitled to recover damages, though the damages would be

diminished in proportion to the negligence attributable to the decedent. The railway company contends that there could be no recovery unless the negligence of the railway company was greater than that of the plaintiff's intestate, and that the instructions on this subject were faulty because of the lack of this qualification.

The doctrine of comparative negligence was unknown to the common law. Courts of admiralty refused to follow the common-law rule that the injured party's contributory negligence barred a recovery, and applied the rule that where, in the case of collision of two vessels, both are at fault, though not in equal degree, the loss will not be allowed to fall solely upon one, but the damages will be apportioned between them as to the comparative degree of fault of each. 1 Thompson on Negligence, § 286. It is quite evident that the act of Congress was intended to break away from the harsh rule of the common law, and adopt a more equitable plan in the distribution of damages caused by the mutual negligence of the parties. The statute allows a recovery "for such injury or death resulting in whole or in part from the negligence of the officers, agents, or employees of the carrier," and provides that "the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." The statute contains three propositions which stand out in bold relief: the first is, that a carrier is liable for the injury or death of an employee resulting *in part* from the carrier's negligence; secondly, the employee's contributory negligence does not cut off the right of action; and, thirdly, there is to be a diminution of damages in proportion to the employee's negligence. It would seem that the clear intent of Congress was to allow some damages for every injury or death caused by the carrier's negligence; to adopt an approximation of the rule of the admiralty courts. The Georgia statute respecting an apportionment of damages in cases of mutual negligence, though somewhat similar, has received a construction different from that we give to the congressional act. It has been construed to mean that where the injury is the result of mutual negligence, there can be no recovery unless the person inflicting the injury is more in fault than the one who is injured. This construction was reached in order to harmonize several cognate sections of the Civil Code. The act of Congress

differs from our legislation on this subject in essential respects, and especially prior to our recent act of 1909 (Acts of 1909, p. 7). The interpretation given to the act of 1908 seems to be borne out by a comparison with the former act of June 11, 1906, as they both· cover substantially the same subject-matter. In the act of 1906 it was provided that "the fact that the employee may have been guilty of contributory negligence shall not bar a recovery where his contributory negligence was slight and that of the employer was gross in comparison, but the damages. shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." The 8th section of the act of 1908 contains a saving clause, that it was not to affect the prosecution of any pending proceeding or right of action under the act of 1906. The superseded act permitted a comparison of the negligence of both parties, not only as affecting the granting of damages, but also as a bar to the action where the negligence of the carrier was slight and that of the employee was gross. The radical difference between the two acts reflects the congressional purpose to abandon the principle of the former for that of the latter. In view of what has been said, we do not think the court misconstrued the act in the instruction complained of.

2. Exception is taken to the charge respecting the measure of damages. The court instructed the jury, "that two elements enter into the assessment of damages under the act of Congress: first, if the next of kin are dependent and if the deceased contributed money to such next of kin, then the amount of such contributions, so far as the jury find that the next of kin would receive the same during the expectancy of the life of the deceased, are recoverable and should be reduced to ·their present cash value; the second element entering into the recovery is, that if the deceased had net earnings in excess of what was contributed to the next of kin, if anything was so contributed, then such net earnings in excess of this sum as the jury find the deceased would likely have earned during his expectancy of life, and would have accumulated at the time of his death, can be recovered; but you would also have to reduce them to their present cash value." The evident purpose of Congress in enacting the employer's liability act of 1908 was to give a right of action, in case of the death of the employee by wrongful act, to certain relatives dependent upon the employee, for the loss

and financial damage resulting from his death. The distinction between the parties to sue and the parties to be benefited is made plain. The suit must be in the name of the personal representative of the deceased, but the recovery is not for the general estate of the decedent, but solely for the benefit of dependent relatives. Am. R. Co. of Porto Rico v. Birch, 224 U. S. 547 (32 Sup. Ct. 603, 56 L. ed. 879). The damages recoverable for the benefit of a surviving widow and children by the personal representative of the deceased employee are for the pecuniary loss which they sustain. "There is no hard and fast rule by which pecuniary damages may be measured in all cases. A minor child sustains a loss from the death of a parent, of a different kind from that of wife or husband from the death of the spouse; while the former is capable of definite valuation, the latter is not." Michigan Central Railroad Company v. Vreeland, 227 U. S. 59 (33 Sup. Ct. 192). As was said by Lurton, J., in the opinion: "This cause of action is independent of any cause of action which the decedent had, and includes no damages which he [the employee] might have recovered for his injury if he had survived. It is one beyond that which the decedent had—one proceeding upon altogether different principles. It is a liability for the loss and damage sustained by relatives dependent upon the decedent. It is therefore a liability for the pecuniary damage resulting to them, and for that only." The jury were improperly instructed as to the estimation of damages. They were told that damages not only were recoverable for the benefit of the surviving widow and children, but, in case the net earnings of the deceased were in excess of this sum, that such excess was also recoverable by the administrator of the deceased employee. Under the evidence this charge was harmful, and requires a new trial.

3. Exception is taken to this instruction: "I charge you that negligence is an omission to exercise the care which the law requires in a particular case. The care required by the defendant and its employees in this case, in the particulars in which they are charged to have been negligent, is ordinary care; and ordinary care is that care which a prudent railway company, acting through itself or its employees or agents, would exercise under the same or similar circumstances. The omission of this standard of ordinary care in a given case by the defendant or its employees where such care is

required would be negligence." The vice is alleged to consist in fixing as the standard of due care that exercised by "a prudent railway company" under similar circumstances. Our code defines ordinary diligence as "that care which every prudent man takes of his own property of a similar nature." Civil Code, § 3471. That definition is contained in the chapter pertaining to "Bailments," but has served as the basis of a formula that ordinary care is that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances. Ordinary care is a relative term, and what is ordinary care is to be measured by the nature of each particular case, and can not be determined abstractly. A railroad corporation, considered as a legal fiction, is an abstraction; but looked at from the point of an aggregation of persons using certain instrumentalities and engaged in the performance of a particular act, it becomes a concrete entity. When we speak colloquially of a railroad company doing a particular act, we have in mind, and are understood to mean, that the act is being performed by the agents of the company. The standard of ordinary care is not what a prudent railroad company, or a prudent industrial corporation, or a prudent merchant, or a prudent manufacturer would have done under given circumstances, but it is that care which ordinarily prudent men engaged in the particular act complained of would have exercised. The jury may have understood the reference to the care exercised by a prudent railway company as that care which ordinarily prudent men, acting for and in behalf of the company, would exercise under the same or similar circumstances, or they may have fixed some artificial standard of what they considered would have been the duty of a "prudent railroad company." Inasmuch as a new trial is granted, we do not feel called upon to decide whether this inaccurate definition of itself would require a new trial.

4. The defendant offered in evidence certain rules promulgated for the conduct of the enginemen and trainmen. One of these rules declared that "enginemen and trainmen must not accept clear hand signals as against fixed signals until they are fully informed of the situation and know that they are protected. Where fixed signals are in operation, trainmen must not give clear hand signals against them." There was conflicting testimony concerning compliance with the quoted rule by the decedent at the time he received his fatal injury, and the witnesses differed as to their in-

terpretation of the requirement of the rule as to following a hand signal as against a fixed signal under the situation presented just before the derailment. The court was requested in writing to charge, that if the plaintiff's intestate upon approaching the switch from which his train was derailed, causing his death, received a hand signal as against the fixed signal, it was incumbent upon the deceased to fully inform himself of the situation and know that he was protected, and that if he failed to do this he would be guilty of negligence. A railroad company may promulgate reasonable rules for the protection of its employees; and an employee to whom the rule applies and who has notice of the conditions which the rule was framed to meet, existing at the time, is bound to comply with them. If the quoted rule is to be interpreted as requiring an engineman who is confronted with conflicting signals to so fully inform himself that he must absolutely know that he is protected before proceeding, then such rule would be unreasonable. But if the rule be interpreted as requiring of the engineman ordinary care to fully inform himself of the situation and thus acquire knowledge that he is protected, the rule would be reasonable. Giving the rule a reasonable construction, the request to charge, which required of the deceased absolute knowledge of the situation, was not adjusted to the rule and was properly refused.

5. The defendant submitted in evidence certain rules intended for the regulation of the conduct of its employees in the management of trains, and complains that the court omitted to construe and apply them to the particular facts of the case. The court's charge was comprehensive of every issue involved; and under such circumstances, if the defendant desired such instructions, it was its duty to have presented timely appropriate requests therefor.

6. It was material to inquire in this case whether the defendant was negligent in having a defective device for operating the derail switch. A witness testified that the device had failed on several occasions to operate the switch. There was an objection that the injury occurred something over a year after the witness observed the device, and that the condition at that time did not illustrate its condition at the time of the accident. The testimony illustrated the question whether the defect was structural, and whether the device was so worn out at the time of the accident as that it would not throw the switch as charged in the petition.

*Judgment reversed. All the Justices concur.*