[No. 12874. Department Two. February 15, 1916.]

GUST ANEST, *Administrator etc., Respondent,* v. COLUMBIA
& PUGET SOUND RAILROAD COMPANY, *Appellant.*[1]

COMMERCE—INTERSTATE COMMERCE — TRACK INSPECTORS. One employed in inspecting the main line of an interstate railroad doing also an intrastate business, to see that no obstruction or defects existed, is engaged in interstate commerce.

MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE—REVERSED ENGINE—FAILURE TO KEEP LOOKOUT—EVIDENCE—SUFFICIENCY. A finding of negligence, as a matter of fact, in running down a track inspector, is sustained by the evidence, where it appears that he was struck while alighting from a speeder by a lone engine backing around a curve, that the rules of the company required a forward lookout on the end car of backing trains and provided that an engine without cars in service on the road shall be considered a train, that no forward lookout was placed on the tender, and that the fireman and also the brakeman, who was looking ahead from the cab window, had an unobstructed view of the track for 1000 feet, that the fireman first discovered the speeder when within 150 feet and gave the signal to stop, and that the brakeman first discovered it when within 300 feet, but gave no signal to stop, and that the engineer stopped the engine when within about 300 feet after receiving the fireman's signal.

SAME—CONTRIBUTORY NEGLIGENCE—TRACK INSPECTOR—EVIDENCE—SUFFICIENCY. A track inspector whose duty it is to look out for the safety of the trains as well as himself, and who allowed himself to be overtaken on a curve in a situation where he could not stop in time to get off the track, was guilty of contributory negligence.

SAME—CONTRIBUTORY NEGLIGENCE—FEDERAL EMPLOYERS' LIABILITY ACT—COMPARATIVE NEGLIGENCE. Under the Federal employers' liability act, the contributory negligence of the plaintiff does not bar a recovery, but reduces the amount proportionally as the negligence of the defendant and of the plaintiff contribute to the causation of the injury.

SAME. The negligence of a track inspector on a speeder, who failed to keep a lookout for a train following until too late to extricate himself, contributed to the causation equally with the negligence of the defendant's train crew on a lone engine in failing to discover him on the track in time to avoid running him down.

[1]Reported in 154 Pac. 1100.

20—89 WASH.

SAME—ASSUMPTION OF RISKS—NEGLIGENT OPERATION OF TRAINS. A track inspector on a speeder does not assume the risk of engines being run over the road reversed without proper lookout or warning being given to avoid running him down.

SAME—FEDERAL EMPLOYERS' LIABILITY ACT—PROPORTIONATE RECOVERY. In an action for wrongful death, under the Federal employers' liability act, the defendant is not concerned with and cannot complain of the apportionment of the judgment between the widow and minor children of the deceased.

Appeal from a judgment of the superior court for King county, Mackintosh, J., entered December 21, 1914, upon findings in favor of the plaintiff, in an action for wrongful death, tried to the court. Modified.

*Farrell, Kane & Stratton* and *Stanley J. Padden*, for appellant.

*Higgins & Hughes, Revelle, Revelle & Revelle*, and *James McCabe* (*Hyman Zettler*, of counsel), for respondent.

HOLCOMB, J.—On Sunday, December 15, 1912, Keneages Flengern, while employed in inspecting appellant's railroad track by the order of his immediate superior, the section foreman, was killed. He was riding eastward from Renton upon a "speeder," or hand car, operated by himself at the time. The morning was cold and stormy, and the deceased had on, when found immediately after the accident, a Swedish cap with flaps fastened over his ears and tied under his chin. At a point about one thousand feet east of a bridge called bridge No. 7, there is a curve to the south in the track. An engine without any car attached was backing down across the bridge, eastward and around the curve, at a speed of about twenty miles per hour. It was running from Renton to Maplewood Farm to "pick up" a car. There were on this engine the engineer, fireman, and a brakeman. The engineer was in his place on the seat box at the right side of the engine when facing toward its head or left side of it as it was going, and the fireman and brakeman sat on a seat box on the opposite side, except when the fireman was

attending to his duties.  There was no man stationed on the rear of the tender or tank of the engine to ascertain if the track was clear and give signals to the engineer.  An engine such as that one, running as it was, can be stopped, according to the condition of the track, in from one hundred and fifty to three hundred feet, if properly equipped.  The engineer, a witness for plaintiff, said that, when just at the end of and coming out of the curve, the fireman saw the speeder ahead on the track and called out to the engineer to whistle. They were then about two car lengths from the speeder.  He immediately applied the emergency brakes and brought the engine to a stop within about three hundred feet.  Before stopping, the locked wheels slid some distance, and the rear of the engine, being the end of the tank, struck the speeder upon which deceased was riding, knocking him off and inflicting upon him fatal injuries.

The engineer could not see the speeder before the fireman called out, because he was on the left-hand side and in the bend of the curve.  The fireman and brakeman for the appellant both state that they did not see the speeder until the moment the fireman called to the engineer.  The deceased had his back to the engine.

The evidence is undisputed that the track upon which deceased was riding, which he was inspecting, and upon which he was killed, was appellant's main line track, and although its railroad lies wholly within King county, state of Washington, it was then being used in transporting cars that went out of the state, carrying both intrastate and interstate commerce.  The deceased was forty-five years of age at the time of his death, and left surviving him a widow and three minor children, all dependent upon him, but living in Greece.

The case was tried to the court without a jury, and the court, after the conclusion of the testimony, and, as he certifies, "with the consent of and accompanied by both parties hereto and their respective counsel, viewed the premises where the accident occurred and also Columbia & Puget Sound en-

gine No. 5, which ran down the deceased." There were findings and conclusions, and judgment against appellant for damages in the sum of $3,700, apportioning $2,835 thereof to the widow, $115 to a minor daughter, $350 to one minor son, and $400 to another minor son.

The complaint charges, in effect, that the appellant was negligent, (1) because it failed to station a man on the rear of the engine to ascertain if the track was clear, and (2) because it failed to exercise reasonable care in the operation of its engine and tender to avoid the collision and consequent injury to the decedent, after the company, its agents and officers, became aware of the presence of the decedent upon its track. The answer pleads assumption of risk and contributory negligence, and denies the allegations of negligence, relationship, and damages, and the further allegation that the things which the decedent was doing were incident and necessary to the carrying on of the business of interstate commerce by appellant, and that the decedent was employed by appellant, aiding and assisting it in carrying on its interstate commerce business.

I.   It is contended by appellant that respondent failed to show a cause under the employers' liability act. This contention is without merit. It was alleged in the amended complaint, and not denied in the answer, that appellant was, at the time of the injury, engaged in interstate commerce. It is shown that the injury occurred on its main line railroad track, and that the decedent was engaged in inspecting the condition of this main line railway track to see that no obstructions or defects existed thereon. It is true that the true test for determining whether the employee is engaged in interstate commerce is the nature of the work being done at the time of the injury. *Illinois Cent. R. Co. v. Behrens*, 233 U. S. 473. In that case the deceased was engaged, at the time he was killed, in switching cars that contained only intrastate freight. A few minutes before that, he had been switching interstate freight. The court held that he was

not within the act. Other similar cases are cited. In the present case, there could be no possible separation of decedent's inspection of appellant's track for the purpose of its intrastate commerce and of its interstate commerce. The two were obviously concomitant. His inspection was for the purpose of aiding and assisting the appellant in the operation of its trains, cars, and locomotives, and the carrying on of its business, both of interstate and intrastate commerce. *Pedersen v. Delaware, L. & W. R. Co.*, 229 U. S. 146, Ann. Cas. 1914 C. 153.

II. It is insisted that no negligence was proven upon which a finding of the court of negligence on the part of appellant could be based. The first part of this finding is that the company carelessly, wrongfully, and negligently, and without having used due care to station on the rear of the tender of the engine any brakeman or other person for the purpose of ascertaining if the track was clear, backed the tender and engine over the tracks down upon the deceased. A rule of the company, introduced in evidence by respondent, was as follows:

"When a train is pushed by an engine, except when switching and making up trains in yards, a trainman must be stationed on the front of the leading car, with proper signals so as to perceive the first sign of danger and immediately signal the engineer."

Another rule of the company, introduced in evidence, is as follows:

"An engine without cars in service on the road shall be considered a train."

The engine in question was out upon the main line of the railroad, running from one station to another for the purpose of getting freight cars, and had no cars attached and being pushed ahead except its tank or tender car, was running backwards, and was not engaged in switching or making up the trains in yards. Appellant urges that no man was therefore required to be stationed on the end of the en-

gine tender any more than one would be required on the front of it when running forwards on the road, and it was shown, without contradiction, that it was not customary with this and other roads to so station a man when running alone on the road backwards. Even if there were no such rules of the company, respondent argues that the appellant might be liable if it failed to use reasonable care in regard to having a man so stationed (citing *St. Louis, I. M. & S. R. Co. v. Jackson*, 78 Ark. 100, 93 S. W. 746, 6 L. R. A. (N. S.) 646; *Lake Shore & M. S. R. Co. v. Murphy*, 50 Ohio St. 135, 33 N. E. 403) ; that it therefore was a question of fact in this case whether or not there was negligence in failing to have a man so stationed, so as to observe and perceive the first sign of any danger or obstruction upon the track.

The testimony of respondent's witnesses was clear and positive that there was nothing to obstruct the view of the fireman of the engine for the thousand feet traversed between the end of the bridge and the point of collision. The engineer himself stated that the weather conditions were such as to permit seeing as far as half a mile. He himself could not see the speeder on which deceased was riding for the reason that he was situated on the outside of the curve as the engine proceeded, but the fireman was sitting on the inside and would thus have a further view. The brakeman, a witness for appellant, testified that he saw the deceased ahead of him for a distance of about three hundred feet; the fireman testified that he saw him one hundred or one hundred and fifty feet, though neither of them disputed the engineer's testimony that neither the brakeman nor the fireman gave the engineer any warning until the engine was about two car lengths, or a little over sixty feet, away from the speeder. As it required about one hundred and fifty feet, according to some witnesses, and about three hundred, according to others, to stop such an engine when running at the rate of twenty miles per hour, it was manifestly then too late to stop in order to avoid a collision. As the evidence was conflicting upon

this question, the trial court personally viewed the scene of the injury, and the inspection was had in the same engine which killed the deceased. He, therefore, had the opportunity of viewing the exact scene and of being able to ascertain and determine whether or not the deceased could or should have been seen a greater distance than he was before being run down.

The second ground of negligence as found by the trial court was that the appellant failed to exercise reasonable care in the operation of its engine and tender to avoid a collision and consequent injury to the decedent, after the appellant and its officers and employees became, or should have become, aware of the presence and imminent peril of the decedent upon the tracks. Upon this question appellant insists that, while it may be the duty of a fireman to keep a lookout on the track for obstructions, still that is only one of his many duties, and there is nothing in the record to show that this duty is owed to section men. The degree of care to be exercised by him was the most reasonable care under existing conditions. It cannot be said that he was required to look out of his window constantly, for if he did so he would have no time to perform his other duties, such as "coaling, oiling," etc. It is further insisted that the rules placed the burden upon trackmen to keep out of the way of trains, and that trains have a right of way over section men. With all these contentions we must agree.

There were three agents of appellant upon the engine, the engineer, fireman, and brakeman, and while it must be assumed that the engineer could not constantly look ahead for trackmen, nor the fireman, yet the third man—the brakeman —undoubtedly could. If there was any negligence on the engine, it must be imputed to the brakeman. The brakeman was standing in the cab on the fireman's side, looking out of the window in the direction in which the engine was going. He himself states that he saw the deceased three hundred feet before they struck him. If, under the circumstances, he could

see the deceased three hundred feet, it is difficult to understand why he did not see the deceased a greater distance, or approximately the one thousand feet which the testimony shows could be seen ahead on the track from that side, at that time. Even if it were not the duty of the engine crew to station a brakeman or some other man on the end of the tender as a forward lookout, it would seem that the brakeman could have seen the deceased sooner than he did, and that had he done, so, the accident could have been avoided. Or, if the brakeman had warned the engineer immediately upon his seeing the deceased three hundred feet away, the accident might have been avoided. Whether it is negligence or not for the servants of a railroad company to run an engine backwards or push cars ahead of an engine without stationing some one on the tender or foremost car to signal its approach to a person who may be on the track, is a question which is controlled by the circumstances under which the engine or train is operated. Under some circumstances, the act has been held to be negligence as a matter of law. Thus, backing an engine around a curve at a speed prohibited by ordinance, at a time when workmen may be expected to be upon the track, has been held to be negligence as a matter of law. *Little Rock & Ft. Smith R. Co. v. Pankhurst*, 36 Ark. 371; *Toledo, W. & W. R. Co. v. O'Connor*, 77 Ill. 391. But in most cases it has been held to be a question of fact to be submitted to the jury. 23 Am. & Eng. Ency. Law (2d ed.), 745, 746. We, therefore, arrive at the conclusion, as a matter of fact, that there was negligence on the part of the servants of the railway company upon the engine in question, in the operation of its engine to avoid a collision and consequent injury to the deceased.

The same finding of the court that finds negligence against appellant concludes with a finding "that deceased used reasonable care and was not himself negligent." This finding is apparently based upon the testimony of the fireman that, when he first saw the deceased, the deceased had stopped the

speeder and was in the act of getting off. From this it is argued that, upon the first warning, the deceased made immediate efforts to get out of the way of the engine and escape danger. On this it may also be inferred that, had he had warning a moment sooner, he could have avoided the engine. There was a rule of the company as follows:

"No notice will be given of the passage of irregular trains. Track and bridge men will govern themselves accordingly. They must use the utmost caution at all times."

The operation of railway trains necessitates that other persons employed upon the railway track look out for the safety of the trains and the lives of those on board as well as their own. Trains cannot be stopped suddenly and cannot move aside to avoid hitting a trackman on the track. Of course, those operating the trains, when they discover, or in the proper performance of their duties reasonably should discover, the presence of trackmen on the track, should not carelessly or wilfully run them down, but should adopt reasonable and immediate measures, according to the circumstances, to avoid doing so.

It is evident here that the deceased negligently placed himself in a situation where he could not extricate himself from his peril in time to avoid the tragedy. This constitutes contributory negligence. Contributory negligence, however, is not a bar to recovery under the Federal employers' liability act, if the employer was in the slightest degree negligent. In *Louisville & N. R. Co. v. Wene*, 202 Fed. 887, the United States circuit court of appeals held that, under the act in question, contributory negligence shall not bar recovery, but shall be considered in abatement of recovery in accordance with the degree thereof; the fact that an employee's negligence is equal to or greater than that of the railroad company will not bar a recovery of any damages. In that case the decedent, a conductor of a freight train, was himself guilty of negligence in failing to see that a switch was closed

after his train in order that a following passenger train might pass. As the passenger train approached, however, the engineer, if he had looked, could have discovered that the switch was open, a distance amply sufficient to enable him to stop the train, but he failed to discover the open switch until after he had run into it, and consequently collided with the freight train and caused deceased's death. It was held that the court properly charged that the decedent was guilty of contributory negligence, and that, after the jury had found the amount of damages to which the decedent's next of kin would be entitled in the absence of decedent's contributory negligence, they should abate that sum by the amount they should find represented decedent's proportionate contributory negligence. To the same effect are: *Grand Trunk Western R. Co. v. Lindsay*, 201 Fed. 836, affirmed by the supreme court of the United States in 233 U. S. 42, Ann. Cas. 1914 C. 168; *Norfolk & Western R. Co. v. Earnest*, 229 U. S. 114, Ann. Cas. 1914 C. 172; *Pennsylvania Co. v. Cole*, 214 Fed. 948; *New York, C. & St. L. R. Co. v. Niebel*, 214 Fed. 952; *Southern R. Co. v. Hill*, 139 Ga. 549, 77 S. E. 803.

In the *Lindsay* case, *supra*, it was held that, under the act, it is only when plaintiff's act is the sole cause, when defendant's act is no part of the causation, that defendant is free from liability. In the *Earnest* case, *supra*, it was held that, under the present act of 1908, Congress intended a recovery in all cases of negligence on the part of defendant no matter what the degree of negligence on the part of plaintiff. In that case it was also said:

"Where the causal negligence is partly attributable to him [plaintiff] and partly to the carrier, he shall not recover full damages, but only a proportional amount bearing the same relation to the full amount as the negligence attributable to the carrier bears to the entire negligence attributable to both; the purpose being to abrogate the common law rule completely exonerating the carrier from liability in such a case and to substitute a new rule   .   .   ."

In Thornton, Federal Employers' Liability and Safety Appliance Acts (2d ed.), 140, the author says:

"If the plaintiff's negligence was as great as that of the defendant, he recovers one-half of his damages. So he may recover if his negligence was greater than that of the defendant."

'See, also, Richey, Federal Employers' Liability Act, p. 39; Roberts, Injuries Interstate Employees, p. 220.

In a recent Oregon case, *Chadwick v. Oregon-Washington R. & Nav. Co.*, 74 Ore. 19, 144 Pac. 1165, the court holds that it is not a question of majority of negligence, but one of proportion. Any negligence of the defendant working injury to the plaintiff would entail some damage. For illustration: If both parties were equally negligent and the damages sustained were $2,000, the verdict should be for the plaintiff in the sum of $1,000. The foregoing authorities and some others not here mentioned furnish a reasonable interpretation and construction of liability under the Federal employers' liability act. In the case at bar, the deceased was not absolved from the necessity of using reasonable care proportioned to the dangers incident to his work and the place where he was working. His duty required him to give attention to his work. But the rules of the company required him to look out for regular and irregular trains and use the utmost caution. We cannot say, as a matter of law, how often he should turn from his work to look out for approaching trains. That was a matter, in view of the nature of his employment and his situation, he had to determine for himself. He, it seems to us, proceeded upon his inspection duties without taking sufficient precautions under the rules of the company and according to the dictates of the duty of self-protection, by looking back as well as forward frequently, so as to discover any train approaching from either direction at the earliest possible moment and avoiding any injury if possible. His negligence existed up to the moment when he was observed, or should have been observed, by the men on the engine, if ordinarily careful

in the performance of their duties.   By both the company
rules and that natural one of self-protection, his duty to look
out for trains, both regular and irregular, was the greater.
His duty to so watch out was increased when entering a
sharp and somewhat obscure curve, and hence his negligence
was increased.   On the other hand, however, at the moment
that he was discovered, or that he should have been discovered,
it was the duty of the train men to use every effort to avoid
injuring him, consistent with their own safety or that of
others.   As was said in the *Cole* case, *supra*, by the United
States circuit court of appeals:

"As the night was clear and the track straight for a con-
siderable distance, no conclusive reason is suggested for the
failure to see the lights, if actually burning, in time to avoid
the collision, assuming that the train was running at the
limited speed stated and as required by the block signals."

In *Lynch v. Chicago & A. R. Co.*, 208 Mo. 1, 106 S. W. 68,
there was a state of facts very similar to those in the present
case.   In upholding the judgment against the defendant in
that case, the court said:

"But it is insisted that there was absolutely no evidence
that the engineer and fireman of the engine actually knew that
John Lynch was upon the track ahead of their engine.   It is
true, as already stated, the day was clear, the track for a
distance of from a half to two-thirds of a mile from the west
to where the deceased was struck was straight, and the veloc-
ipede and the man thereon was an object that could not
escape being seen by the engineer and fireman with their
faces turned towards the east, the direction in which their
engine and tender and the velocipede were traveling at the
time.   .   .   .   It is also in evidence that, when this engine
returned east following the deceased, it was running back-
wards with the tender in front and it was not only their duty
under such circumstances to keep a lookout, but the evidence
shows that only a very few minutes before they struck him
they were actually looking ahead.   From the time they
turned the curve east of the coal chute until they struck him,
the track was straight and unobstructed, and the day was

clear and bright and there was absolutely nothing to keep them from seeing an object as large as a velocipede with a man upon it. . . . 'It appearing that the deceased had a right to be where he was on the track, that his life could have been saved by the use of ordinary care by the defendant's servants operating the train, and that they failed to exercise such ordinary care, a demurrer to the evidence was rightfully overruled although there was evidence tending to show that the deceased was guilty of negligence.' "

In *Pittsburgh, C. C. & St. L. R. Co. v. Rogers*, 45 Ind. App. 230, 87 N. E. 28, a section hand was engaged in work on the track with his back to the approaching train. He did not see it and was run over. His representative recovered on the theory that the engine crew were negligent in the operation of the engine, as they could have seen the deceased for half a mile before hitting him. To the same effect are: *Louisville & N. R. Co. v. Morris*, 179 Ala. 239, 60 South. 933; *Missouri Pac. R. Co. v. Bentley*, 78 Kan. 221, 93 Pac. 150; *Kelley v. Chicago, B. & Q. R. Co.*, 118 Iowa 387, 92 N. W. 45; *Egan v. Southern Pac. Co.*, 15 Cal. App. 766, 115 Pac. 939; *St. Louis, I. M. & S. R. Co. v. Jackson*, 78 Ark. 100, 93 S. W. 746, 6 L. R. A. (N. S.) 646.

The rule in such cases is well stated in 2 Thompson, Negligence, § 1759:

"Such persons [track walkers, repairers and inspectors], using the hand-cars by the license of the railway company, are lawfully upon the track, and, on principles already considered, the railway company owes them the duty, through the men who are driving its trains, to *keep a lookout* for them and to exercise reasonable care to avoid running over them."

We cannot agree with the trial court that the deceased was free from negligence, but hold that he was guilty of contributory negligence, and his contributory negligence was at least equal to, if not greater than, the negligence of the defendant's engine crew. Under all the circumstances shown in this case, we will simply find that his negligence was equal to the negligence of the appellant.

III. Appellant asserts that the deceased assumed the risk. This contention is based principally upon the rule of the company that section men were to have no notice of trains, regular or irregular, but must use the utmost care for their own safety. It is shown that the deceased had been working on this section for five years and had often made a trip over this section at the same hour. Trains of both appellant company and the Milwaukee railroad were passing this point at all hours of the day and at irregular intervals. This fact was known to the deceased, and it is claimed, therefore, that the approach of a train at any minute was a thing to be expected, and was one of the perils and hazards of his occupation, and was a risk which he assumed. The case of *Cooney v. Great Northern R. Co.*, 9 Wash. 292, 37 Pac. 438, is relied upon. In that case a section man on a speeder was injured in a collision while upon the right of way. It was found that:

"The train with which he came in contact was in plain view for a distance of a mile and a half, and was seen, or could have been seen by him, and if he failed to discover that it had left the station and thereby exposed himself to danger, surely the railroad company ought not to be required to respond in damages for the injuries resulting from his own misjudgment, especially in the absence of proof that the train was *negligently operated.*"

The general rule is stated in 20 Am. & Eng. Ency. Law (2d ed.), 112:

"A servant will be presumed to have notice of and to have assumed the risks incident to all dangers and defects which, to a person of his experience and understanding, are or ought to be patent and obvious."

Same, p. 123:

"Risks arising out of the negligence of the master, or of one whom the master intrusts with the superintendence of his work, are not risks ordinarily incident to the employment, and are not assumed by the employee."

Under the present Federal law, the negligence of a fellow servant is also eliminated as a defense to such an action.

In *Connelley v. Pennsylvania R. Co.*, 201 Fed. 54, 47 L. R. A. (N. S.) 867, the circuit court of appeals, in an action for the negligent killing of a track walker under the Employers' liability act, held that such track walker, "employed to walk over and watch tracks and repair small defects, while there is a constant passing of trains, assumes the risk of injury by being struck by trains *properly operated*, and he must adopt for his self-protection reasonable safeguards" (Syllabus); that,

"Where a railroad operates its trains . . . in a proper and careful manner, trackwalkers and repairmen are necessarily subjected to great risks. Their very occupation is one of constant peril. Indeed, it follows from the nature of such employment that the duty of self-preservation has to rest on them, for no adequate protection, other than self-protection, can be afforded them;" citing a number of cases.

In that case, it was pointed out, however, that the train was as carefully and properly operated as was possible. A train was backing up in a station where there were sixteen tracks, on one of which the deceased was working as a repairer. On the end of the train which struck decedent, a brakeman was stationed to give warning to any one he saw by shouting or working the air whistle. It was shown that he was on watch and had control of the air brake, but owing to the cloud of steam enveloping the decedent from near-by engines, he did not see him until the car was hitting him, when he instantly applied the air.

The deceased assumed the risk of injury from all trains properly operated, but we have seen and found in this case that the engine here in question was improperly operated. The deceased did not assume the risk of engines being run over the road reversed without proper lookout or warning being given to avoid running him down. We cannot agree with the contention that, in such a case, the doctrine of as-

sumption of risk applies. *Pittsburgh, C. C. & St. L. R. Co. v. Rogers, supra.*

IV. Appellant contends, also, that the court erred in its findings when it found that the widow and minor dependents of the deceased were entitled to certain sums in apportioning the judgment. It has been held by the United States supreme court, in *Central Vermont R. Co. v. White*, 238 U. S. 507, that the distribution of the award is of no concern to the defendant. This being the holding of the Federal courts upon a question of Federal legislation, this court is of course bound thereby.

There are some other contentions made by appellant in which we find no merit.

As the case was tried without a jury and is to be tried by this court *de novo* upon the record, we will order a judgment upon the law and the facts in accordance with this opinion. The court below found the entire damages to which respondent was entitled to be $3,700. This was in accordance with the facts supporting it, and we will not alter it. He found this judgment, however, upon the finding that the deceased was free from negligence and the entire negligence was that of the appellant. This was erroneous, the deceased being equally negligent with the appellant. The respondent is, therefore, entitled to one-half the amount of damages found, or $1,850. The judgment is, therefore, modified so as to allow the respondent a judgment of $1,850, apportioned in the same proportion substantially between the surviving widow and the dependent children of deceased as the proportions fixed by the trial court. That is a mere matter of mathematical calculation which can be made by the court below or by the clerk. As so modified, the judgment will stand affirmed.

Appellant will have its costs of appeal.

Parker, Main, and Fullerton, JJ., concur.