[No. 14346.   Department Two.   February 21, 1918.]

NORA BELLE BAIRD, *Administratrix etc., Respondent,* v.
NORTHERN PACIFIC RAILWAY COMPANY, *Appellant.*[1]

MASTER AND SERVANT—FEDERAL EMPLOYERS' LIABILITY ACT—CON-
TRIBUTORY NEGLIGENCE. In an action under the Federal employers'
liability act for the death of a section foreman, his contributory
negligence is not a defense, but is to be compared with the defend-
ant's, leaving it to the jury to say whether there was any negli-
gence on the part of the defendant, rather than to fix the proxi-
mate cause.

SAME—FEDERAL EMPLOYERS' LIABILITY ACT—NEGLIGENCE—SIGNALS
—QUESTION FOR JURY. In an action under the Federal employers'
liability act for the death of a section foreman, killed in a head end
collision in a cut on a curve, whether the engineer signalled for
the curve and cut, as required by the rules, in time to have avoided
the accident, is a question for the jury, where it appears that, when
the whistle was blown, the train and car were 1,500 feet apart, and
the testimony of defendant's witnesses that a previous whistle was
blown 3,000 feet from the cut is negatived by the testimony of other
witnesses that they heard no such whistle although they heard the
train and other whistles further away.

SAME—NEGLIGENCE—OPERATION OF TRAINS—VIOLATION OF ORDERS.
An order requiring an engineer to signal for curves and cuts is
for the protection of track employees as well as the public.

SAME—OPERATION OF TRAINS—NEGLIGENCE — SIGNALS — VIOLATION
OF STATUTE. In an action for the death of a section foreman, killed
in a head end collision on a curve, the violation of the statute mak-
ing it a misdemeanor for an engineer to fail to whistle at least eighty
rods from a county road crossing is not negligence *per se*, since a
whistle after passing the crossing might have given the deceased
sufficient time to stop his car.

MOUNT, J., dissents.

Appeal from a judgment of the superior court for
King county, Albertson, J., entered April 4, 1917, upon
the verdict of a jury, rendered in favor of the plaintiff,
in an action for wrongful death.   Reversed.

[1]Reported in 170 Pac. 1016.

*C. H. Winders,* for appellant.

*Edmund Smith, L. V. Newcomb,* and *A. G. Worthington,* for respondent.

CHADWICK, J.—A. W. Baird, husband of plaintiff, Nora Bell Baird, had been foreman for six years upon a section of defendant's railroad on the east shore of Lake Washington. He was efficient and had a thorough knowledge of the rules pertaining to his work. On the 26th day of January, 1916, he was killed in a collision between an extra freight train going south and his own gas car going north. The accident occurred to the south of the cut, through which the track was laid on a curve. The point of the accident was about thirty-two rail lengths, or 960 feet, south of the grade crossing known as the Factoria crossing.

Defendant was charged with negligence in several particulars. All of which, save one, were not in any way sustained by testimony, and were withdrawn from the jury by the court without objection on the part of counsel for plaintiff.

The only charge remaining, and upon which the verdict must be sustained, if at all, is that

"defendant negligently failed to sound any whistle or warning of the approach of said extra freight, and negligently ran said extra freight through a curve and cut on said railway track, at said high and dangerous rate of speed, and without sounding any whistle or warning as the said extra freight approached said cut and the gas car upon which the deceased was riding, thereby causing said extra freight train to suddenly come upon and collide with the gas car upon which the said deceased and his men were riding, without any notice of its approach, whereby the engine of the said extra freight train collided with the said deceased."

The case went to the jury upon this theory. At the trial, the storm center of the controversy was whether

13—100 WASH.

the engineer had sounded the whistle at a whistling post located 3,000 feet north of the Factoria crossing, and whether the statute making it a misdemeanor in one failing to sound a whistle at least eighty rods from a country road crossing would bring the case within the rule that a violation of a positive statute would make the defendant company negligent *per se*, and whether an employee of a railroad could claim the benefit of such a statute.

Defendant insisted that the statute was for the benefit of the traveling public only, to protect those who might be upon the highway or near the crossing. The court adopted the theory of the plaintiff, and instructed that the failure to observe the requirements of the statute would be negligence *per se*, and that the statute was for the benefit of an employee trackman as well as the general public. But it seems to us that these were not material things, and that we are not called upon to decide as to the application of the statute, or to construe it with reference to its scope and meaning.

The issue, irrespective of the statute, was whether defendant failed to give a warning signal before the train ran into the cut and in time to warn the deceased of his danger. In other words, whether it omitted a duty owing to the individual, rather than its statutory duty to the general public, although he may have been benefited thereby, and which, if it had been performed, would have avoided the accident. This is the issue made by the pleadings.

These facts are indisputably shown by the testimony of plaintiff's witnesses: That deceased with his crew left Wilburton station, about two miles north of Factoria, in the morning and went south to help repair a bridge located about a mile south of Factoria. At the bridge, another section crew was at work. After a short time, deceased left the work to the other crew,

leaving one of his own men to act as flagman. He then proceeded north with the remainder of his crew at a speed of twelve to fifteen miles an hour. The engine of the gas car made considerable noise. Deceased had gone but a short distance when he stopped the car and "spoke about a wrench that he had either left at the bridge or had a wrench belonging to the other gang, or something like that." There was a spur in the vicinity, and "he usually stopped to listen and go onto the spur." By adroit questioning, counsel for plaintiff sought to make it appear that deceased had stopped for the purpose of listening for the train, but there is no testimony, and no circumstance from which it can be inferred, that he stopped for that reason. No witness testifies that he listened, or that he had other concern than for the wrench.

It is a positive rule of the company, of which the deceased had notice, and knowledge of which he and other section men had to assert from time to time by way of written examination—his last examination being in the record—that section men and track workers must take account of their own safety and avoid passing trains, and that it is the duty of trackmen, when approaching a cut, to proceed cautiously and, if necessary, flag their way. The rules are all contained in a book of rules, upon which the deceased spent much time in faithful study. It is also clear that deceased had inquired of the agent at Wilburton and knew that two trains were to be expected, one a passenger, and the extra freight. He knew that the freight was due to leave Wilburton at about the time he was at the bridge. He spoke of it to one of his section gang.

Deceased did not stop when near the cut, and the first notice those on the car had of the approaching freight train, which was on a down grade and probably coasting, was when it came around the curve in the

cut, being then about 375 feet away from the gas car. The engine on the car was not shut down, although a witness says he put his foot on the brake. It does not seem to be contended that deceased was not negligent to the last degree, not only in his conduct, but in his utter disregard of all the rules of the company.

This case is brought under the Federal employers' liability act, and the negligence of the deceased is not a defense. His negligence is to be compared with the negligence of the defendant, if the defendant is found to be negligent.

The testimony of the plaintiff's witnesses, as well as the defendant's witnesses, shows that the train was proceeding south at from twenty to twenty-five miles per hour, which was not an excessive rate of speed; that, as the train passed the Factoria crossing, it blew a whistle for the cut; that the distance between the place where the whistle was blown and the point of collision is thirty-two rail lengths, or 960 feet; that, if the gas car was going twelve or fifteen miles an hour—two witnesses say the car and train were going at the same speed—it must have been at least eighteen car lengths, or 540 feet, south of the point of collision, so that, when the whistle was blown, the car and the train were at least 1,500 feet apart.

It is in the record that the engineer had orders to whistle around all curves. The issue was, as we have said, whether the warning was given in time so that, if it had been heard—and we charge deceased with the duty of hearing it—he could have stopped his car and found a place of safety. Under the state law, no recovery could be had, for the deceased was negligent almost to the point of suicide. But under the Federal act, recovery can be had; for, as we understand that law, we are not to fix the proximate cause (*Grand Trunk Western R. Co. v. Lindsay,* 233 U. S. 42), but to inquire only

whether there is ground for leaving it to a jury to say whether there was any negligence on the part of the carrier. *Anest v. Columbia & Puget Sound R. Co.,* 89 Wash. 609, 154 Pac. 1100; *Norfolk & Western R. Co. v. Earnest,* 229 U. S. 114; *Louisville & N. R. Co. v. Wene,* 202 Fed. 887.

The engineer having been under orders to signal around curves and through cuts for the protection of all who might be on the track, it was for the jury to say whether the signal was given in time to have avoided the accident. However much our holding may be opposed to common law rules, we feel, nevertheless, that the case falls within the rule of the Federal statute.

Appellant contends that there is no evidence to overcome the positive testimony of the engineer and fireman that the whistle was blown at the Factoria whistling post; that the testimony of witnesses who say they did not hear the whistle will be rejected as negative testimony when measured by the positive testimony of those who say the signal was given. *Holland v. Northern Pac. R. Co.,* 55 Wash. 266, 104 Pac. 252. But the testimony in this case is not altogether negative. The witnesses were not at a remote distance. One witness testifies that he was familiar with the passing of trains; that he heard the train whistle at Wilburton, two miles above Factoria; that he knew it was before the train reached Wilburton, for he heard the train go over a trestle just south of Wilburton after it had whistled; that he heard no other signal until the whistle was blown before entering the cut. While the testimony of this witness was somewhat obscured by a skillful cross-examination, it is not to be rejected on that account. It was enough to take the case to the jury. *Hibbard v. Oregon-Washington R. & Nav. Co., post* p. 429, 171 Pac. 233.

Appellant contends further that the company was under no duty, in so far as the deceased was concerned, to give any signals at all, and some authority is cited to support this contention. But we think this case does not fall within the rule contended for, or within the contention of appellant that the statute requiring the blowing of a whistle eighty rods before crossing the highway is one for the benefit of the traveling public only, for, as we have said, the engineer was under orders to give warning signals. His duty rested in the order, if not in the statute, and so far as deceased was concerned, and as between employees, the order would have the force of a statute.

The court instructed that the defendant would be guilty of negligence *per se* if it violated the statute. This was fundamentally wrong, and for the time, at least, put a burden of proof upon the defendant which, considering the facts in the case, the law does not warrant. The effect of the court's instruction was to leave the jury free to find that the failure of defendant to give the signal at the whistling post was the proximate cause of the injury; whereas, considering all of the demands of the statute, and admitting, for the purpose of the argument and as a matter of law, that a signal must be given 3,000 feet away from a point of danger, defendant might have sounded the whistle 1,000 to 2,000 feet south of the whistling post, and thus have given deceased all the time he would have had if he had been at the road crossing.

Whether a signal was given at the whistling post was a proper subject of inquiry, but it was error for the court to admit the possibility of its being controlling. The time, and not the place, is the material issue. The fallacy of treating a failure to sound a warning at the whistling post as negligence *per se* can be best illustrated by reversing the viewpoint. If the giving of the

signal were proven beyond a doubt, plaintiff could still urge her claim for damages upon the theory that deceased, being 1,500 feet south of the crossing and 4,500 feet south of the whistling post at the time the signal was given was at such a distance that he could not reasonably be expected to hear it. If the statute is to bind the one, it must bind the other. It is obvious to us that the facts are such that it cannot be held, as a matter of law, that the failure to sound a signal at the whistling post was negligence *per se*.

Under this view of the case, we are not called upon to decide whether the statute was enacted for the benefit of the employees of the company, a question upon which the authorities are divided; or, if so, whether the deceased, by his contract, waived its protection; or whether, by nonobservance of his admitted duty to avoid the coming of a train of which he had been given timely notice, deceased put himself in such a position that plaintiff cannot avail herself of it.

Reversed and remanded for new trial.

ELLIS, C. J., and HOLCOMB, J., concur.

MOUNT, J. (dissenting)—This case should be dismissed because there was no negligence of the appellant. The whole negligence was on the part of the deceased employee.

## ON REHEARING.

### [*En Banc.* June 21, 1918.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court still adhere to the opinion heretofore filed herein, and for the reasons there stated, the judgment is reversed.