[No. 18219.  Department One.  December 21, 1923.]

KIYE KONNO, *as Administratrix etc., Respondent*, v.
NORTHERN PACIFIC RAILWAY COMPANY *et al.,*
*Appellants.*[1]

RAILROADS (79, 84)—NEGLIGENCE—SUFFICIENCY OF LIGHTS—EVI-
DENCE—QUESTION FOR JURY.  Whether a locomotive was equipped
with lights, notwithstanding the positive statement of the engineer
that it was, is a question for the jury, where witnesses testified that
they looked in its direction and saw no lights; and the statement of
a cautious witness, in a position to see, that he certainly would have
seen a light if there had been one, is not negative, but positive
testimony, notwithstanding he admitted there might possibly have
been lights.

SAME (80)—CONTRIBUTORY NEGLIGENCE—EVIDENCE—SUFFICIENCY.
A section foreman, struck and killed by a locomotive at night, while
removing his speeder from the track, was not guilty of contributory
negligence as a matter of law, where there was evidence that there
was no proper light on the locomotive and no way of telling how
near it was, that only forty seconds elapsed from the time he first
saw a light, and there was danger of injury to persons on the train
if the speeder were not removed from the track  (MACKINTOSH, J.,
dissenting).

SAME (82)—VIOLATION OF RULES—PROXIMATE CAUSE OF ACCIDENT.
The violation of a rule requiring a section foreman to ascertain the
movement of trains, does not preclude a recovery for his death, when
the proximate cause thereof was the failure of a train to carry a
light, and not his violation of the rule.

MASTER AND SERVANT (184)—JOINT LIABILITY—JUDGMENT—VER-
DICT EXONERATING SERVANT.  A verdict exonerating an engineer, but
holding the railroad company liable for the death of a section fore-
man through running a train backwards without any light, is not

[1]Reported in 221 Pac. 318.

objectionable, where the negligence charged was not only that of the engineer but also of the conductor in ordering the engineer to run backwards at night without showing a proper light.

Appeal from a judgment of the superior court for Franklin county, Truax, J., entered June 9, 1923, upon the verdict of a jury rendered in favor of the plaintiff, in an action for wrongful death. Affirmed.

*Cannon & McKevitt (Edward A. Davis, of counsel),* for appellants.

*Driscoll & Horrigan,* for respondent.

HOLCOMB, J.—Respondent, as administratrix, sued appellant and the engineer of its interstate commerce train, one Snyder, for damages on behalf of herself and minor children for the killing of her husband. On the trial before a court and jury, Snyder was exonerated, and a verdict for $5,000 against appellant returned.

The complaint alleged negligence in that the appellant operated its train, which at the time of the accident consisted of an engine and caboose, carelessly and negligently, and without warning backed into a speeder operated by the deceased; that the train was being run backward from Washtucna to Pasco; that the engine was not properly equipped with lights to give to deceased sufficient warning of its approach; that the train was carelessly and negligently operated by the engineer, Snyder, and the conductor, at an excessive speed for a train not properly equipped with headlights to show light along the track over which the train was being operated at the time; that the death of respondent's decedent resulted directly and proximately from the wrongful negligence and carelessness of appellant and its employees, Snyder and Erickson, who were in charge of the engine and caboose, and be-

cause of their failure in operating the train to give sufficient notice or warning of the approach of the train.

When the case went to the jury it stood substantially upon the following facts:

At the time of his death, and for ten or twelve years prior thereto, the decedent was employed as a section foreman for the Spokane, Portland and Seattle Railway Company, over which appellant operated trains. On January 2, 1923, he came to Pasco under instructions from his superior, the roadmaster, to get his pay check and to get supplies. This had been the custom for years, with the full knowledge of the employer. On that particular day, he secured his pay check, two boxes of groceries, and a sack of meat, and accompanied by two other Japanese, started out about 4:30 p. m. from the Northern Pacific freight depot at Pasco for Levy, a station about fifteen miles from Pasco on the Spokane, Portland and Seattle Railway, where he resided and had charge of the section. He and his companions stopped at the shanty of one Johnson and secured a lantern, being the regulation yellow lantern used by section men while traveling on the track, at about 5 o'clock p. m., when it was becoming dark, and put the lighted lantern on the forward part of the gasoline speeder on which they were making the trip. Their motor had trouble while returning, causing delay, and when the speeder upon which they were riding reached a point about 650 feet east of a pump house out on the Snake River, they saw a light in the distance which they thought was a train, and which afterwards proved to be a train. As one of the surviving Japanese testified, when they saw the light they were not sure an engine was coming, but they thought one was coming. The survivors testified that, when they saw the light down the track in the direction

of Martindale, a station on the Spokane, Portland & Seattle Railway, the deceased caused the speeder to be stopped, ordered his companions to leave the speeder, and remove the boxes and sack, and to get the speeder off the track. They removed the boxes and sack, and started to remove the speeder, when the engine came out of the darkness, hitting and instantly killing Konno. The men on the speeder at all times looked down the tracks towards Martindale, but did not see a train or a light until the engine hit Konno. If the engine had a light on the tender, or if equipped with a light, it was not burning. The engine was traveling at a speed of about thirty miles per hour, and traveled about 700 feet after hitting the speeder. The engine had a regulation headlight on the front of the engine, but it was not running in that direction, and if it showed any light, witnesses did not see it.

Although appellant strenuously contends that the evidence offered by respondent shows that there were lights on the engine, and that the positive testimony of Snyder that there was a bull's eye light on the tender of the engine, and that it was turned on and burning from the time the train left Martindale, running backwards towards Pasco, was not competently controverted, the evidence of a disinterested witness who lived at and operated the pumping station, who heard the speeder go by and heard the crash when the engine struck it, was that he saw no light before the collision, and that, when he ran to the scene of the accident, there was no light on the engine; that if there had been, as he was looking for it, he certainly should have seen it.

Appellant contends that because, on cross-examination, this witness, evidently being somewhat reluctant to be too positive, admitted that "there might have

been lights on the train," but if there had been he certainly should have seen them, for he was looking from a place about seventy-five feet from the track, on a higher elevation, and about eight or nine hundred feet from the place where the collision occurred, without anything to obstruct his view, and with the ability to see up the track five miles, and saw no light on the engine, although on cross-examination he admitted that there possibly could have been lights, but declared that it really seemed to him as if he would have seen the lights, looking in that direction, had there been any. His testimony, it is contended, is no more than negative testimony, and has not the effect of contradicting the positive testimony of the engineer. As to this we do not consider the testimony of the witness referred to as merely negative testimony. It was positive testimony, though coming from a cautious witness, and its weight and credibility were for the jury. The evidence also showed that the engine and crew in question had left Pasco that evening with a freight train which reached Washtucna, fifty-eight miles away, when a drawbar having broken, they were ordered to leave the freight train and run backward with the engine and caboose to Pasco. There was an allegation in the complaint that the engine was not properly equipped in accordance with the laws, rules and regulations of the interstate commerce commission, nor according to the laws of the state of Washington, with proper headlights.

Most of the eighteen alleged errors complained of by appellant have to do with the sufficiency of the evidence to make a case against appellant. Many cases from this and other courts are cited to support this contention.

On the facts here presented, there is no doubt that there was a case to go to the jury, when the testimony

as to the sufficiency of the lights on the tender was in conflict. *McKinney v. Port Townsend & Puget Sound R. Co.*, 91 Wash. 387, 158 Pac. 107; *Kent v. Walla Walla Valley R. Co.*, 108 Wash. 251, 183 Pac. 87; *Smith v. Inland Empire R. Co.*, 114 Wash. 441, 195 Pac. 236; *Cline v. Northern Pacific R. Co.*, 123 Wash. 86, 211 Pac. 878.

The next chief contention of appellant is that, under the evidence, the deceased was clearly guilty of contributory negligence, thus defeating recovery.

Upon this point it is argued that Konno was first to see the light on the engine, according to the testimony of respondent's witnesses, who were with him on the speeder, and that at least forty seconds elapsed from the time he first saw the light and the instant of the collision; that he had been running his car slowly on account of motor trouble, and brought his car to an immediate stop; that, after seeing the light, he ordered the men to remove the supplies from the car; that they did so, and placed them about six feet from the track, removing the lantern also, and started to remove the car; that Konno was on the front end and the other two men on the other end of the speeder; that the speeder was swung around and was about half off the tracks when the collision occurred, Konno having been on the end that was still on the track; and was struck and killed while standing in the middle of the track. It is also contended that Konno was under no duty to remove the car.

As to these contentions, forty seconds is not a very great length of time for three men to have removed two boxes and a sack from the speeder and attempt to remove the car itself. There is evidence also that the speeder ran about thirty feet before stopping. Konno being a section foreman, no doubt considered it his duty to save the car, if he had time enough, and prob-

ably also considered as he would have a right to, that, if the train struck the motor car, it might do injury to the train and its occupants.    There is evidence in the record that that result might ensue.    Besides, under all the circumstances shown here, if there was no light on the rear of the engine bearing down on them, there was no way to tell how far away the engine and caboose were, and such a light train would probably run without any great noise so that they could tell that it was coming, and approximately how far away.    There is, therefore, nothing in these facts to sustain the contention of appellant.

Appellant further contends that Konno, being a section foreman in the employ of the company, violated a rule of the company which required him to obtain a "line up" of trains operating over the track upon which he was going to travel before going out upon the track with a gas car.

It was shown that there was such a rule of the company, but under the circumstances hereinbefore detailed, the jury had a right to conclude, as a matter of fact, that the violation of such rule by Konno was not the proximate cause of the accident.    In other words, had there been sufficient lights upon the tender of the engine, traveling backwards through the dark at thirty miles per hour, other employees rightfully using the track could readily have seen them.    Konno had a light on the front of his car which could have been seen.    The failure to find out from the operating department of the company what trains were moving in that vicinity at that time, the jury had a right to consider made no difference.    The deceased had a right to assume that trains would not be operated without sufficient lights, and to look out for and otherwise give sufficient warning to give him an opportunity to protect himself and avoid being run down.    *Anest v. Co-*

*lumbia & Puget Sound R. Co.,* 89 Wash. 609, 154 Pac. 1100.

The above case answers several other contentions made by appellant, reference to which cannot be made without unnecessarily prolonging this opinion.

Complaints are also made of the giving and refusal to give certain instructions by the trial court, in which, upon being examined, we find no error under the facts and circumstances shown in this case, and we think the court properly submitted the case to the jury upon the issues of fact presented. See *Anest v. Columbia & Puget Sound R. Co., supra.*

It is also contended that because Snyder was exonerated by the jury, and that, if there was any negligence shown at all, it was the negligence of Snyder, that that *ipso facto* exonerated appellant.

We do not consider that contention tenable for the reason that the negligence complained of was not only the negligence of the engineer Snyder, but also of the conductor, and the appellant itself in ordering the engine and caboose to be run backwards in the nighttime, fifty-eight miles on its roadway without showing proper lights, or else traveling more cautiously and giving proper warnings to persons rightfully on the tracks.

Another alleged error is the admission of testimony asserted to be incompetent, of certain witnesses respecting the life expectancy of the deceased. This we have examined and find unmeritorious.

An examination of the record discloses no error warranting a reversal.

The verdict and judgment are affirmed.

MAIN, C. J., TOLMAN, and PARKER, JJ., concur.

MACKINTOSH, J. (dissenting)—I dissent for the reason that the evidence establishes the contributory negligence of the deceased.