# CHICAGO, BURLINGTON AND QUINCY RAILWAY COMPANY *v.* WILLIAMS.

### CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 243.  Argued March 14, 15, 1907.—Decided April 15, 1907.

Under § 6 of the Circuit Court of Appeals Act of March 3, 1891, 26 Stat. 826, the certificate of the Circuit Court of Appeals as to questions or propositions of law concerning which it desires instruction must present a distinct point of law, clearly stated, which can be decided without passing upon the weight or effect of the advice on which the question arises, and if not so presented this court is without jurisdiction; and where the question certified practically brings up the entire case, and this court is asked to pass upon the validity of a contract and indicate what the final judgment should be, the certificate will be dismissed and the questions not answered.

THIS case is before the court upon a question certified by the Circuit Court of Appeals under the sixth section of the Judiciary Act of March 3, 1891, providing that in every case within its appellate jurisdiction a Circuit Court of Appeals may certify to this court any questions or propositions of law concerning which it desires instruction for the proper decision of such case. 26 Stat. 826, c. 517.

Accompanying the certificate is a detailed statement of the case as disclosed by the evidence. It is well to give that statement in full. It is as follows:

"The judgment which the writ of error challenges was rendered after a trial and a verdict of a jury for $5,000 damages caused to the defendant in error, who will hereafter be called the plaintiff, by the negligence of the servants of the railway company, the defendant below, in the operation of a cattle train, in the caboose of which the plaintiff was riding under this contract:

"Burlington Route.

"*Live Stock Contract.*

"Issued by Chicago, Burlington & Quincy Railway Company.

"Agents of this company are not authorized to agree to forward Live Stock to be delivered at any specified time or for any particular market.

"Agents will permit only the names of the owners or *bona fide* employés, who accompany the stock, to be entered on the back of the contract without regard to passes allowed by number of cars.

"The contract when endorsed by the person or persons in charge and signed in ink by agent, will entitle such person or persons to ride on same train with stock to care for same, but will not entitle holder of contract to ride on any other train, nor will contract be accepted for passage on any passenger train.

"Conductor of freight train must punch contract, or in absence of punch will endorse his name on back of contract when presented for passage.

"Live Stock contracts are not good for return passage. Parties entitled to return passage will be provided with return ticket on application to proper office. Conductors will be held strictly responsible for permitting persons to ride on stock contracts, except when in charge of live stock.

| No. of waybill. | No. and initial of car. | No. of animals in each car. |
|---|---|---|
| 42 | 50043Q | 17 |
| 43 | 16168Q | 17 |

"Read the Contract.

"ROBERTSON, Mo., STATION.

"This Contract, made and entered into this 26 day of Sep., 1903, by and between Ed Williams of Robertson, of the first part, and the Chicago, Burlington & Quincy Railway Company of the second part.

"Witnesseth, That for and in consideration of 23½ per cwt., subject to minimum weights as shown in published tariffs, the said Railway Company agrees to transport 2 cars loaded with cattle (number of cars, number of waybill, and number of animals as noted above), from Robertson to U.-S. yds. consigned to Drumm Com. Co.; and the said first party in consideration thereof, agrees to deliver the said animals, to the said Railway Company, for transportation between the points aforesaid upon the following terms, viz.:

"That whereas, the said first party, before delivering the said animals to said Railway Company, demanded to be advised of the rate to be charged for the carriage of said animals, as aforesaid, and thereupon was offered by the said Railway Company alternative rates proportionate to the value of the said animals, such value to be fixed and declared by the first party or his agent, and

"Whereas, such alternative rates are made in pursuance of the provisions relating thereto of the classification of freights adopted as regulations by the said Railway Company, and, fully set forth as follows, to-wit:

"Live Stock.—Ratings given above are based upon declared valuations by shippers, not exceeding the following:

Each Horse or Pony (Gelding, Mare or Stallion), Mule
    or Jack................................................. $100 00
Each Ox, Bull or Steer.................................... 50 00
Each Cow................................................. 30 00
Each Calf................................................ 10 00
Each Hog................................................. 10 00
Each Sheep or Goat....................................... 3 00

"When the declared value exceeds the above, an addition of 25 per cent. will be made to the rate for each 100 per cent.

or fraction thereof, of 'additional declared valuation per head;' which said alternative rates are fully shown in and upon the regular tariffs and classifications printed, published and posted by the said Company as required by law, and

"Whereas, the first party, in order to avail himself of said alternative rates, and to secure the benefit thereof, has declared, and does hereby declare said animals to be of the value as follows, to wit: Each Steer, Value, $50 00."

· "To which value the rate aforesaid is proportioned by the classifications and tariffs aforesaid.

"Now, in consideration of the premises and of the foregoing, it is expressly agreed that for all purposes connected with, resulting from, or in any manner growing out of this contract, and the transportation of the said animals pursuant thereto, the value of the said animals and of each thereof, shall in no case exceed the said valuation.

"It is further agreed in consideration of the alternative rate so made by the said Railway Company and accepted by the first party, that in case of loss or of damage to said animals, whether resulting from accident or negligence of said Railway Company, or its servants, the said Railway Company shall not be liable in excess of the actual loss or damage; and in no case shall the said Railway Company be liable in any manner in excess of the agreed valuation upon each animal lost or damaged. Nor shall said Railway Company be liable for loss or damage after delivery to any connecting line, nor for any loss or damage not incurred upon its own line, but nevertheless in the event that the said animals are to be transported beyond the line of the railway of the second party upon and by any connecting line forming a part of the system known as the 'Burlington System' then it is expressly understood and agreed that this contract shall be for and shall inure to the benefit of, the corporation operating such connecting line, and such connecting line shall be liable to perform all the obligations of this contract.

"It is further agreed that the said Railway Company shall

in no case be liable. for any loss ,or damage to said animals,
unless a claim shall be made in writing by the owner or owners
thereof, or his or their agents, and delivered to a General
Freight Agent of the said Railway Company, or to the agent
of said Railway Company at the station from which the ani-
mals are shipped, or to the agent at the point of destination,
within ten (10) days from the time the said animals are re-
moved from the cars. And in case of loss or damage upon
any connecting line, such connecting line shall not be in any
manner liable unless claim shall be made in like manner in
writing to such general officer or agent of such connecting
line.

"And in consideration of free transportation 'for one person,
designated by the first party, hereby given by said Railway Com-
pany, such persons to accompany the stock, it is agreed that the
said cars, and the said animals contained therein, are and shall
be in the sole charge of such persons, for the purpose of attention
to and care of the said animals, and that the said Railway Com-
pany shall not be responsible for such attention and care; and,
further, that the second party shall not be liable to the first party,
or any of his servants, agents or copartners, or other person,
carried pursuant to this contract, for any injury or damage,. from
whatever cause, suffered or incurred while being so carried. And
the first party agrees that, before setting out upon the journey, he
will fully inform each of the persons to be carried pursuant hereto
of the provisions of this contract in this regard.

"It is agreed that the said animals are to be loaded, unloaded,
watered and fed by the owner or his agent in charge; that. the
second party shall not be liable for loss from theft, heat or cold,
jumping from car, or other escape, injury in loading or unload-
ing, injury which animals may cause to themselves or to each
other, or which result from the nature or propensities of such
animals, and that the Railway Company does not agree to
deliver. the stock at destination at any specified time, nor for
any particular market.

"Witness the name of the Railway Company by its Agent,

and the hand of the first party, the day and year first above written.

     "CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY,

             . "By C. M. HOLT, *Agent.*

"ED. WILLIAMS, *Shipper.*

   "If this contract is for two or more cars, and is presented to the Company's Agents at the below named addresses within 3 days from date, it may be exchanged for a return pass for the above named party in charge, it being distinctly understood that said pass must be used the same day as issued.

   "Atchison, Kans., General Agent's Office.

   "Beardstown, Ill., Local Freight Agent's Office.

   "Burlington, Iowa, Division Freight Agent's Office.

   "Chicago, Ill., General Freight Office, Union Stock Yards.

   "The defendant pleaded that it was exempt from liability for damages to the plaintiff by virtue of the italicized paragraph of the foregoing agreement. At the close of the trial there was substantial evidence that the injury to the plaintiff was caused by the negligence of the defendant's servants in the operation of the cattle train, the evidence relative to the contract between the parties for the free transportation of the plaintiff was uncontradicted and it established these facts: The plaintiff resided at Robertson in the State of Missouri. He had been engaged in dealing in and shipping cattle in that State for eighteen years, had frequently made contracts of the character of that here in evidence and was familiar with this agreement, and with the rates and terms upon which the Railway Company transported cattle from Robertson to the city of Chicago. The defendant operated regular passenger trains and carried passengers thereon between these stations for a regular fare of about $12. The danger of accident and injury to one riding in the caboose of a cattle train is about four times the danger to one riding in a coach of a passenger train. The defendant offered to carry and did transport cattle from Robertson to Chicago and between other places on its railroad

and assumed the entire responsibility and care of them during
the transportation, without furnishing free transportation to
the shipper or any of his agents and without any agreement
that he or any of his agents should water, feed or give care or
attention to the cattle during the transportation, for the same
price and rate as it charged and received in cases in which the
owner or his agent received free transportation upon the cattle
train and agreed to assume the responsibility of the care of
the cattle and the risk of his own injury while riding upon the
freight train, as he did in the contract in evidence.   The rail-
way company preferred to carry and care for the cattle without
furnishing transportation to any one upon the freight trains,
but nevertheless it offered to provide, and when desired did
provide free transportation on the cattle train for one person
for every two cars shipped upon the terms specified in the
italicized paragraph of the agreement.  Cattle were shipped
each way.   The railway company charged and received the
same rate whichever method was adopted and left the shippers
free to make their choice.  The majority of the shippers
accepted the free transportation on the train with their cattle
and agreed to care for them and to hold the company exempt
from liability for any injury to themselves while they were
riding on the freight train.   The plaintiff and other shippers
had the option to ship their cattle without free transportation
for any one and to throw the entire care of the cattle on the com-
pany, or to accept the free transportation and to make the agree-
ment to care, for their cattle during the transportation and to
exempt the defendant from liability for their injuries while riding
on the cattle train.   The plaintiff was not requested, required
or constrained to accept the free transportation upon the cattle
train upon which he rode, to assume the care of the cattle
during their carriage or to ride on the cattle train and to agree
that the defendant should not be liable for his injuries while he
was so carried, but he did so voluntarily because he wished to
accompany his cattle to Chicago and to sell them there.   In
this state of the case the trial court denied the request of counsel

for the defendant to instruct the jury to return a verdict in its favor; an exception was taken to this ruling and it was assigned as error.

"And the Circuit Court of Appeals for the Eighth Circuit further certifies that the following question of law is presented by the assignment of errors in this case, that its decision is indispensable to a determination of this case and that to the end that this court may properly decide the issues of law presented it desires the instruction of the Supreme Court of the United States upon the following question:

"Where the owner of cattle has the option to ship them to market at the same rate without free transportation for himself or his agents on the cattle train, to throw the entire responsibility of the care of the cattle during the transportation upon the railroad company and to travel to the market town on a passenger train of that company for the regular fare, or to accept free transportation to the market town upon the cattle train which carries his cattle, to assume the responsibility of their care during the transportation and to agree that the railroad company shall not be liable to him for any injury or damage which he sustains while he is being so carried, and without request, requirement or constraint he voluntarily chooses the latter alternative, is his contract that the railroad company shall not be liable to him for such injury or damage valid?"

*Mr. O. H. Dean,* with whom *Mr. W. D. McLeod, Mr. Hale Holden, Mr. H. C. Timmonds* and *Mr. O. M. Spencer* were on the brief, for Chicago, Burlington and Quincy Railway Company.

*Mr. Timothy J. Butler, Mr. D. C. Allen, Mr. John H. Denison, Mr. John Hipp* and *Mr. Ralph Talbott* for Edgar C. Williams.

MR. JUSTICE HARLAN, after making the foregoing statement, delivered the opinion of the court.

In *Jewell* v. *McKnight,* 123 U. S. 426, 432, 434, 435, the court

had occasion to determine the scope of those provisions of the Revised Statutes which authorized the judges of the Circuit Court in any civil suit or proceeding before it where they were divided in opinion, to certify to this court the point upon which they so disagreed. Rev. Stat., §§ 650, 652, 693. Speaking by Mr. Justice GRAY, this court held that each question certified must be a distinct point or proposition of law clearly stated, so that it could be definitely answered, without regard to other issues of law or of fact in the case. It said: "The points certified must be questions of law only, and not questions of fact, or of mixed law and fact—'not such as involve or imply conclusions or judgment by the court upon the weight or effect of testimony of facts adduced in the cause.' . . . The whole case, even when its decision turns upon matter of law only, cannot be sent up by certificate of division." In that case the general creditors of one of the parties sought to set aside, as fraudulent, a warrant of attorney to confess judgment. The court further said: "The statement (embodied in the certificate and occupying three closely printed pages in the record) of what the judges below call 'the facts found' is in truth a narrative in detail of various circumstances as to the debtor's pecuniary condition, his dealings with the parties to this suit and with other persons, and the extent of the preferred creditors' knowledge of his condition and dealings. It is not a statement of ultimate facts, leaving nothing but a conclusion of law to be drawn; but it is a statement of particular facts, in the nature of matters of evidence, upon which no decision can be made without inferring a fact which is not found. The main issue in the case, upon which its decision must turn, and which the certificate attempts in various forms to refer to the determination of this court, is whether the sale of goods was fraudulent as against the plaintiffs. That is not a pure question of law, but a question either of fact or of mixed law and fact. . . . Not one of the questions certified presents a distinct point of law; and each of them, either in express terms or by necessary implication, involves in its decision a con-

sideration of all the circumstances of the case.  . . . . 'They are mixed propositions of law and fact, in regard to which the court cannot know precisely where the division of opinion arose on a question of law alone;' and 'It is very clear that the whole case has been sent here for us to decide, with the aid of a few suggestions from the circuit judges of the difficulties they have found in doing so.' *Waterville* v. *Van Slyke,* 116 U. S. 699, 704." See also *Fire Asso.* v. *Wickham,* 128 U. S. 426, 434.

In *United States* v. *Rider,* 163 U. S. 132, the Chief Justice, speaking for the court, said that "it has always been held that the whole case could not be certified," and that "under the Revised Statutes, as to civil cases, the danger of the wheels of justice being blocked by difference of opinion was entirely obviated." In that case it was also held that certificates of questions of law by the Circuit Courts of Appeals under the Judiciary Act of March 3, 1891, are governed by the same general rules as were formerly applied to certificates of division of opinion in the Circuit Court—citing *Columbus Watch Co.* v. *Robbins,* 148 U. S. 266; *Maynard* v. *Hecht,* 151 U. S. 324.

In *United States* v. *Union Pacific Railway,* 168 U. S. 505, 512 (which was the case of certified questions from a Circuit Court of Appeals), the rule as announced in the *Rider case* was affirmed. To the same effect are *Graver* v. *Faurot,* 162 U. S. 435, 436; *Cross* v. *Evans,* 167 U. S. 60, 64; *McHenry* v. *Alford,* 168 U. S. 651, 658.

The present certificate brings to us a question of mixed law and fact and, substantially, all the circumstances connected with the issue to be determined. It does not present a distinct point of law, clearly stated, which can be decided without passing upon the weight or effect of all the evidence out of which the question arises. The question certified is rather a condensed, argumentative narrative of the facts upon which, in the opinion of the judges of the Circuit Court of Appeals, depends the validity of the live-stock contract in suit. Thus, practically, the whole case is brought here by the certified question, and we are, in effect, asked to indicate what, under all

the facts stated, should be the final judgment. It is, obviously, as if the court had been asked, generally, upon a statement of all the facts, to determine what, upon those facts, is the law of the case. We thus state the matter, because it is apparent that the case turns altogether upon the question propounded as to the validity, in view of all the facts stated, of the contract under which the plaintiff's cattle were transported. This court is without jurisdiction to answer the question certified in its present imperfect form and the certificate must be dismissed. *Sadler* v. *Hoover,* 7 How. 646.

*It is so ordered.*

MR. JUSTICE BREWER dissented.