# LOUISVILLE & NASHVILLE RAILROAD CO *v.* PASCHAL.

1. In an action for damages by a railroad conductor against his employer, while engaged in interstate commerce upon one of the trains of his employer, under the Federal employer's liability act, where it appears that the negligence of the defendant and that of the plaintiff concurred

in producing the injury, the negligence of both parties is to be deemed the proximate cause of the injury; and it is not error for the judge, in referring to causal negligence of the parties, to instruct the jury that if it should be found that the plaintiff was injured as alleged, the plaintiff would be entitled to recover, if the defendant was negligent in the manner alleged, and if such negligence "contributed in whole or in part to the injury."

2. It was not erroneous for the judge to charge as indicated in the second division of the opinion.

3. There being no evidence in this case to show an emergency which authorized the plaintiff to ride on the engine at the time of the collision in which he received his injury, rather than in the caboose where, by a rule of the company, he was required to ride except in case of emergency, it was error for the judge to instruct the jury on the basis of an emergency having been proved.

4. In an action by an employee against a railroad company for damages on account of permanent injuries, where there is evidence to authorize a finding that the plaintiff sustained permanent injuries and by reason thereof his earning capacity was impaired, it is proper for the jury, in passing upon the amount of his damages, to estimate his loss by reason of decreased earning capacity reduced to its present cash value. While instructing the jury as to the amount of damages to be allowed on account of decreased earning capacity, it is inaccurate to charge that "the value of the earning capacity of plaintiff would have to be reduced to its present cash value."

JULY 13, 1916.

Action for damages. Before Judge C. S. Reid (motion for new trial before Judge Smith). DeKalb superior court. July 31, 1915.

H. L. Paschal instituted an action for damages for personal injuries received by him, against the Louisville & Nashville Railroad Company and the Atlantic Coast Line Railroad Company, lessees of the Georgia Railroad & Banking Company, engaged as common carriers. The petition alleged, among other things, that the plaintiff was an employee of the defendants, running as conductor on a freight-train known as No. 14-C from Atlanta to Augusta, carrying cars and freight which had been received from points without the State, and which were bound for points beyond the limits of the State. At the same time another freight-train running on schedule extra 62-west, also carrying freight, was running in an opposite direction; that is to say, from the direction of Augusta towards Atlanta. When the plaintiff's train was about to enter a deep cut where there was a sharp curve of the railroad-track to the left, just east of defendants' one hundred and thirty-seven milepost in Rockdale county, there was a head-on collision

between these two trains. The curve prevented the plaintiff from seeing the approach of the other train until the engines were within less than one hundred feet of each other. He received described injuries; and his action therefor was under the act of Congress approved April 22, 1908 (35 Stat. 65), entitled "An act relating to the liability of common carriers by railroad to their employees in certain cases," as amended by the act of 1910, approved April 5, 1910. 35 Stat. 65 (Fed. Stat. Ann., Supp. 1909, p. 584). The plaintiff had been instructed by his superior officers to proceed in an eastern direction to some point east of Conyers, and his next meeting point was a station east of the place of collision. He was without fault, and the collision was the direct result of the negligent failure of the agents and employees of the defendants' crew in charge of another designated freight-train, proceeding east in front of the train on which plaintiff was conductor, to carry signals for his train, and of the defendants' negligent failure to have a headlight by which petitioner could have been warned of the approaching danger. Other grounds of alleged negligence related to the transportation of the plaintiff to Augusta after he was injured, and his subsequent treatment by the surgeons of the company; a statement of which is unnecessary here. The defendants admitted in their answer that the plaintiff was injured in a head-on collision at the time and place described in the petition, that at the time of the injury he was employed by them and engaged in interstate commerce, and that at the time of the injury he had orders from his superior officers to meet the other train at some point east of the place where the collision occurred; but it was denied that the defendants were negligent in failing to have a headlight on the engine, and that the plaintiff himself was in the exercise of ordinary care; and it was alleged that he was negligent, and that his negligence was the proximate cause of the injury. A verdict in favor of the plaintiff was returned. The defendants made a motion for new trial, which contained the usual general grounds, and complained of a number of excerpts from the judge's charge to the jury. The case was tried by Judge Reid, of the Stone Mountain circuit, who having died, the case on the motion for new trial was decided by his successor, Judge Smith. A new trial was denied, and the movant excepted. Other facts will sufficiently appear in the opinion.

*McDaniel & Black* and *A. C. & J. H. McCalla,* for plaintiff in error. *E. R. Hill, George Westmoreland, Sidney Smith, P. C. O'Gorman, Pierce Brothers,* and *John T. West,* contra.

ATKINSON, J. 1. Several grounds of the motion for new trial complain of certain excerpts from the charge, whereby the judge instructed the jury that if it should be found that the plaintiff was injured as alleged in the petition, the plaintiff would be entitled to recover, if the defendants were negligent in the manner alleged, and if such negligence "contributed in whole or in part to the injury." The criticism upon the charge was that it did not correctly state the law, in that it would have authorized a recovery in the event the jury found that the defendants' negligence merely "contributed" to the injury; whereas, in order for the plaintiff to recover, his injury must have been the "result" of the defendants' negligence, which was of such character as to amount to the proximate cause of the injury. In the brief it was argued: "There is a vast difference between negligence which may contribute to an injury and negligence which may cause an injury. Negligence is never actionable except it be the cause of injury. If there be another and predominating cause, the fact that negligence may have contributed will not make that negligence actionable negligence." Again it was said in the brief: "We do not contend . . that if the injury *resulted* in whole or in part from the company's negligence, the company is not liable; but what we do contend is that the injury must have *resulted* in whole or in part from the company's negligence, and that there is no liability where the negligence of the company contributes in whole or in part to the injury, unless that contributing negligence was in whole or in part the proximate cause of the injury." The act known as the Federal employer's liability act (Federal Statutes Annotated, Supp. 1909, p. 584) undertook to provide for a statutory liability of railroad companies engaged in interstate commerce, for damages to their employees resulting in death or injury to them. Section one of the act declared, in part: "For such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency due to its negligence in its cars, appliances, machinery, track, road-bed, boats, wharves, or other equipment." In section three it is declared, "that in all actions hereafter brought

against any such common carrier by railroad under or by virtue of any of the provisions of this act, to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: Provided, that no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." In a suit brought under this statute, it was held, in *Southern Railway Co. v. Hill,* 139 *Ga.* 549 (77 S. E. 803): "In a suit by the administrator of the deceased employee against a railway company, to recover damages for the alleged wrongful death of the employee, brought under the act of Congress of April 22, 1908, commonly known as the employer's liability act, it was not erroneous to instruct the jury that -if both the plaintiff's intestate and the railway company by their negligence contributed to the former's death, the plaintiff nevertheless would be entitled to recover damages, though the damages would be diminished in proportion to the negligence attributable to the decedent." In the course of the opinion it was said by Mr. Justice Beck: "It is quite evident that the act of Congress was intended to break away from the harsh rule of common law, and adopt a more equitable plan in the distribution of damages caused by the mutual negligence of the parties. The statute allows a recovery 'for such injury or death resulting in whole or in part from the negligence of the officers, agents, or employees of the carrier,' and provides that 'the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee.' The statute contains three propositions which stand out in bold relief: the first is, that a carrier is liable for the injury or death of an employee resulting *in part* from the carrier's negligence; secondly, the employee's contributory negligence does not cut off the right of action; and, thirdly, there is to be a diminution of damages in proportion to the employee's negligence. It would seem that the clear intent of Congress was to allow some

damages for every injury or death caused by the carrier's negligence; to adopt an approximation of the rule of the admiralty courts." This decision was rendered February 28, 1913. A few months later a similar question came before the Supreme Court of the United States in the case of Norfolk & Western R. Co. *v.* Earnest, 229 U. S. 114 (33 Sup. Ct. 654, 57 L. ed. 1096, Ann. Cas. 1914C, 172), where it was held: "The purpose of the provision in regard to contributory negligence in the employer's liability act is to abrogate the common-law rule of complete exoneration of the carrier from liability in case of any negligence whatever on the part of the employee, and to substitute therefor a new rule confining the exoneration to a proportional part of the damages corresponding to the amount of negligence attributable to the employee." The ruling above announced was made in reference to an exception to a charge to the jury, wherein the judge gave instruction that "Contributory negligence is the negligent act of a plaintiff which, concurring and co-operating with the negligent act of a defendant, is the proximate cause of the injury. If you should find that the plaintiff is guilty of contributory negligence, the act of Congress under which this suit was brought provides that such contributory negligence is not to defeat a recovery altogether, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee. So, if you reach that point in your deliberations where you find it necessary to consider the defense of contributory negligence, the negligence of the plaintiff is not a bar to a recovery, but it goes by way of diminution of damages in proportion to his negligence as compared with the negligence of the defendant. If the defendant relies upon the defense of contributory negligence, the burden is upon it to establish that defense by a preponderance of the evidence." In discussing the exception to this charge, it was said by Mr. Justice Van Devanter: "The thought which the instruction expressed and made plain was that, if the plaintiff had contributed to his injury by his own negligence, the diminution in the damages should be in proportion to the amount of his negligence. This was twice said, each time in terms readily understood. But for the use in the second instance of the additional words 'as compared with the negligence of the defendant,' there would be no room for criticism. Those words were not

happily chosen, for, to have reflected what the statute contemplates, they should have read, 'as compared with the combined negligence of himself and the defendant.' We say this because the statutory direction that the diminution shall be 'in proportion to the amount of negligence attributable to such employee' means, and can only mean, that, where the causal negligence is partly attributable to him and partly to the carrier, he shall not recover full damages, but only a proportional amount bearing the same relation to the full amount as the negligence attributable to the carrier bears to the entire negligence attributable to both; the purpose being to abrogate the common-law rule completely exonerating the carrier from liability in such a case, and to substitute a new rule confining the exoneration to a proportional part of the damages corresponding to the amount of negligence attributable to the employee."

In connection with the excerpts from the charge upon this subject which were excepted to in the case under consideration, the judge instructed the jury, in effect, that in order for the plaintiff to recover it must appear that the defendant was negligent as alleged in the petition, and that its negligence was the proximate cause of the injury. In referring to negligence of the defendant as "contributing" to the injury, the charge is to be construed as referring to causal negligence; that is to say, negligence of the defendant which contributed to produce the injury. When there is a concurrence of negligence by both parties producing the injury, the proximate cause of the injury is the negligence of both parties. When the charge is so construed, it is governed by the principles as applied in the foregoing decisions, to the effect that where an injury is produced by the combined negligence of the railroad company and the employee, the plaintiff may recover, notwithstanding the negligence of the employee might exceed that of the employer. In this connection see Roberts on Injuries to Interstate Employees on Railroads, §§ 114-118, and cases cited in notes; *Charleston & Western Carolina Ry. Co.* v. *Brown*, 13 *Ga. App.* 744 (79 S. E. 932); Louisville & Nashville R. Co. v. Lankford, 209 Fed. 321 (126 C. C. A. 247); Pennsylvania R. Co. v. Cole, 214 Fed. 948 (131 C. C. A. 244); New York C. & St. L. R. Co. v. Niebel, 214 Fed. 952 (131 C. C. A. 248); Illinois Central R. Co. v. Porter, 207 Fed. 311 (125 C. C. A. 55).

2. Error was assigned upon certain excerpts from the charge, as follows: "The plaintiff further says, gentlemen, that he has been permanently injured as a result of, the defendants' negligence, and that his capacity to labor and earn money has been permanently impaired. He alleges that he has been permanently injured and by reason thereof his ability to labor and earn money has been impaired. Now, if this be true and the jury believes he is entitled to recover on the case made, he would be entitled to further compensation on that account. The burden is upon the plaintiff to show the fact that his capacity to labor and earn money has been permanently impaired, and the extent of such impairment, or to furnish data to the jury from which they may be able to ascertain his financial loss in this respect. In passing upon this question, gentlemen, you would ascertain from the evidence whether the plaintiff's capacity to labor and earn money is impaired by his injuries, and, if so, the extent of such impairment, and whether such impairment will extent into the future and through the remainder of his life; and if you should so find, you would award him such sum as you think reasonable and just, in view of the nature and extent of the injury and in view of all the facts and circumstances of the case as disclosed by the evidence. If you should believe from the evidence that the plaintiff has not suffered any permanent injury as the result of the injuries mentioned in the evidence, then you would not allow him anything for permanent injury. No fixed rule exists for estimating this sort of damage." The exception to this part of the charge was directed principally to the last clause, namely, that "no fixed rule exists for estimating this sort of damage." It was urged in the exception that this should not have been given in connection with the charge as to permanent damages, it being contended that "there is a fixed rule for estimating and fixing such permanent damages." There was no merit in this criticism.

3. On the question of the plaintiff's contributory negligence, the defendants introduced, among others, rule No. 149, promulgated for government of employees, which was as follows: "The proper place for a freight conductor, while his train is in motion, is in the deck of his caboose, if it has one. If the caboose should not be provided with a deck, he will then maintain such other position, either on top or inside, as will give him a full view of his

train and enable him to see that his brakemen properly perform their duties, and to know that his flagman goes out promptly when necessary to flag. He must also keep a sharp lookout, especially when rounding curves. He should not ride on the engine except in cases of emergency." The plaintiff testified that he was the conductor of the train on which he was riding when the collision occurred, and that at the time of the collision he was riding on the engine. The reason assigned by him for riding on the engine was that when he left Conyers he "got there" so that he could "leave some cars for the Central Railroad at Covington." He further testified: "I wanted to cut these cars off for the Central Railroad at Covington, and place them in the spur-track without loss of time. If I had been in the cab, I would have had to walk up there before cutting off these cars. It would have taken about ten or fifteen minutes to walk up on that rock-ballast track. We had made up a little time going down hill near Almand." In another part of the plaintiff's testimony, he stated: "The reason I give for riding on the engine instead of being in the caboose was that I wanted to be up where my engine stopped, so as to give direction to them about the cars of ice when I got to the junction. If I had been back in the caboose instead of on that engine, I would have had to walk from where the caboose was up to that engine. It was this walk that I wanted to save, and the time, too; it takes some time to go over the rock. I wanted to save the walk and the time, too, it would have taken to walk it. My train was 15 car-lengths long. These cars average about 60 feet long. I think some of them are 60 feet. Yes, I would have had to walk 900 feet if they average 60 feet long, and if they average 30 feet, it would be 450 feet, something like that. I don't know how long it would take me to walk nine hundred feet; it would take a pretty good while on that rock ballast down there. Some freight-cars are thirty-five feet, and some 60 feet I think. I think they would average more than thirty-five feet; I think they would average between about 40 and 60. Yes, I reckon these cars were about 600 feet long. I rode on that engine in order that I would not have to walk 600 feet, in order that I would save the time of walking 600 feet." While instructing the jury the judge referred to rule No. 149, and told them that it was a reasonable rule and binding on the plaintiff and defendants, and that under a proper

34

construction of the rule the plaintiff would not have a right to ride on the engine of a freight-train except in case of emergency. He then proceeded to charge the jury upon the subject of emergency, and told them, among other things, that if they should find that the plaintiff rode on the engine on account of an emergency which authorized him to do so, then he would have a right to ride on the engine without violating the rule. Error was assigned upon this charge and others which were predicated on the basis of an emergency. One of the grounds of exception was that there was no evidence of an emergency to authorize the charge. The plaintiff's testimony, as set forth above, states the facts relied on to show the existence of an emergency authorizing him to leave the caboose and go upon the engine. The rule of the company forbade his doing so except in case of emergency. Taking his own version of the circumstances, his leaving the caboose and going to the engine was a mere matter of convenience, and was not required by any impending emergency. In the recent case of *Seaboard Air-Line Ry.* v. *McMichael*, 143 *Ga.* 689 (85 S. E. 891), the question of what would amount to an emergency was sufficiently discussed in the opinion by Mr. Justice Beck, wherein it was held that the evidence in that case, which was quite similar to that in the present case, was insufficient to authorize a charge upon the subject of an emergency, for the purpose of excusing the employee for violating a rule of the company. For later expressions on the same subject, see United States *v.* Southern Pacific Co., 209 Fed. 562 (126 C. C. A. 384).

4. The defendant also excepted to the following charge: "Now, gentlemen, you would take into consideration, in fixing the whole amount, whatever amount you may allow this plaintiff for permanent injury, or for the impairment of his ability to labor and earn money. If you allow it on the basis of loss of earning capacity, you would take into consideration the fact that a man only gets this money as he earns it, year by year or month by month; and assuming his ability to earn is shown by the evidence to have been impaired, he would be entitled to recover it all at once, and you would take into consideration that fact, if he recovers anything; it would be paid to him all at once, paid down in cash; and hence the value of his earning capacity would have to be reduced to its present cash value; and in doing that you could make

use of any method that you saw fit to adopt for yourselves." The ground of exception was to that part of the excerpt wherein the judge stated that in arriving at permanent damages "the value of the earning capacity of the plaintiff would have to be reduced to its present cash value;" and the contention was that the court should have instructed the jury that "the plaintiff's loss by reason of his decreased earning capacity should be reduced to its present cash value." The charge was inaccurate, and was subject to the criticism made upon it.

*Judgment reversed. All the Justices concur.*