# LOUISVILLE & NASHVILLE RAILROAD CO. *v.* HOOD.

1. In a suit for personal injuries, brought against a railroad company under the Federal employers' liability act, where it is shown that the railroad company was guilty of negligence having a causal relation to the injury, contributory negligence upon the part of the plaintiff will

not be a bar to a recovery, although the injuries could have been avoided by the exercise of ordinary care upon the part of the plaintiff.

2. The other questions propounded by the Court of Appeals are not of such a character as to confer upon this court the right to entertain, consider, and answer them.

No. 1328.    FEBRUARY 14, 1920.

The Court of Appeals certified the following questions (Case No. 9481):

"1. Where a suit for personal injuries is brought against a railroad company under the Federal employers' liability act, and the injuries could have been avoided by the exercise of ordinary care by the plaintiff, will the failure to exercise such care bar a recovery, or is this to be treated simply as contributory negligence which would diminish the recovery, if the railroad company was also shown to be negligent?

"2. Relatively to an 'extra-gang foreman' of a railroad, whose duty it was to repair and surface the track and keep the road-bed and the track in proper shape and passable for trains, is it negligence on the part of the railroad company to pile up slag, dirt, and stones—a general mixture for ballasting the road-bed, in such close proximity to the track that the vibration from passing trains would cause some of it to fall upon the track, and thereby cause the derailment of a hand-car in which the plaintiff (the extra-gang foreman) was riding for the purpose of repairing the track?

"3. Under the circumstances mentioned in question number 2, was the danger of the derailment of the hand-car in which the plaintiff was riding an ordinary risk and hazard of his occupation, or was it a risk not naturally incident to the occupation, but arising out of the failure of the railroad company to exercise due diligence with respect to providing a safe place of work for its employees?

"4. Under the circumstances stated in question number 2, where the hand-car upon which the plaintiff was riding was derailed when going around a curve before he had reached the piece of track he was intending to repair, and where upon the trial the plaintiff himself testified: 'I could see the slag before I got to it. As far as seeing it was concerned, it was all along there; we had to contend with that every minute we were running. I knew all the time that that was the condition we worked under. I knew that it was the way we unloaded stuff several times. . . That was the common condition; looking at it, you understand. . . .

Going around that curve I saw this condition ahead of me. I seen the stuff piled up on the outside of the rail ahead of me. . . My car continued at the rate of about ten miles. . . I said a pebble about as big as your thumb, or something of that sort, would derail the wheel. I don't know how large that was we ran over. The cause of the derailment was this stuff falling down on the track. . . The matter of protecting the hand-car is one of the duties of the foreman. . . The section-foremen are the men of all other men whose duty it is to have a safe road-bed for the trains to go back and forth over. The company has to look to them to do it. . . I had four men on the car, going about ten miles an hour around the curve, and did not send a flagman around the curve. . . It is my duty to flag around all dangerous places. . . I was in charge of my lever-car there and in control of it. The men on it were subject to my orders. I could tell them to slow down, and it was their duty to do it. . . I had railroaded for thirty-five to forty years in all capacities almost. . . When a foreman, extra-gang man, or ordinary foreman goes out on the railroad-track it is his duty to be on the lookout for any and all sorts of defects. He carries the eyes of the railroad company, so far as finding defects. . . When I started out it was as much my business and as much my duty to be looking out for spikes that might be loose or any sort of defect that might exist in the track as well as it was [for looking out] for the bucked track. That was true not only on that particular trip but it was true all the time. . . I didn't know just where the bucked track was, but it is a fact that it usually bucks on curves. . . I had not gotten to the bucked track when my lever-car was derailed. . . I knew that the shaking and running of trains would cause it [the slag] to fall down. . . I knew that two trains had come over this track about a couple of hours before that. . . The passenger-train had just come over this same piece of track. . . It was immediately after these trains passed that I left Hombre to go out on my lever-car. . . Yes, it is also true they run extra trains up there on that road. They get up a train of coal-cars and send them off down to the mines to be loaded extra; and I wouldn't know what minute they might come on-me. . . This railroad is not very old. . . I forget the age of it. . . There was a great deal to do

to bring it up to what railroad men call a standard or good railroad,'—was the presence of the ballast upon the road-bed, placed as it was in such close proximity to the track, and the danger of the same falling upon the track by the vibration of passing trains, and derailing the hand-car in which the plaintiff was riding, ordinary risks and hazards of the plaintiff's occupation, which he had assumed, and defects and risks which were known to him, or which were plainly observable? Under such circumstances, was the plaintiff entitled to recover even if the defendant were negligent in so placing and maintaining the ballast upon the road-bed? See, in this connection, Schlemmer *v.* Buffalo R. R., 220 U. S. 590 [31 Sup. Ct. 561, 55 L. ed. 596]; Seaboard Air-Line Ry. *v.* Horton, 233 U. S. 492 [34 Sup. Ct. 635, 58 L. ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475]; Roberts, Injuries to Interstate Employes, § 103; Richey on Federal Employers' Liability Act, p. 154, § 65, p. 177, § 72, p. 186, § 75; Thornton on Federal Employers' Liability Act (3d ed.), p. 173, § 110, p. 177, §§ 113, 114."

*Tye, Peeples & Tye, D. W. Blair, W. E. Roberts* and *J. H. Boston,* for plaintiff in error.

*G. F. Gober, J. E. Mozley, H. B. Moss,* and *W. I. Heyward,* contra.

BECK P. J. 1. In the act of Congress known as the Federal employers' liability act, approved April 22, 1908, and entitled "An act relating to the liability of common carriers by railroad to their employees in certain cases," it was enacted, after describing the carriers by railroad to which the terms of the act are applicable, "That in all actions hereafter brought against any such common carrier by railroad under or by virtue of the provisions of this act, to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." In a case involving the provisions of the act quoted this court said: "The statute contains three propositions which stand out in bold relief: the first is, that a carrier is liable for the injury or death of an employee resulting *in part* from the carrier's negligence; secondly, the employee's contributory

negligence does not cut off the right of action; and, thirdly, there is to be a diminution of damages in proportion to the employee's negligence. It would seem that the clear intent of Congress was to allow some damages for every injury or death caused by the carrier's negligence." *Southern Railway Co.* v. *Hill,* 139 *Ga.* 549 (77 S. E. 803). See also *L. & N. R. Co.* v. *Paschal,* 145 *Ga.* 521 (89 S. E. 620). And it has been held by the Supreme Court of the United States that it is only where the act or omission on the part of the plaintiff is the sole cause—when the defendant's act is no part of the causation, that the defendant is free from liability under the act. See Grand Trunk Ry. Co. *v.* Lindsay, 233 U. S. 42, 34 Sup. Ct. 581, 58 L. ed. 838, Ann. Cas. 1914C, 168). And it would seem a fair statement of the rule to say that unless the act or omission of the plaintiff is the sole cause of the injury, his act or omission must be considered as contributory negligence, and contributory negligence does not defeat a recovery. See Richey on Federal Employers' Liability Act, 39 et seq.; 18 R. C. L. 826 et seq. And where a railroad company has been guilty of negligence that has a casual relation to the plaintiff's injury, the plaintiff may recover even though he has been guilty of contributory negligence in regard thereto, and that contributory negligence was of such a character and so related to the injury received that if the plaintiff had exercised ordinary care he might have avoided the consequences of the defendant's negligence. If the defendant was negligent, and negligent in such a way as to bring about or contribute to the injury, the fact that the plaintiff failed to exercise diligence, when under the circumstances by the exercise of diligence he might have avoided the injury, in no wise makes his negligence the sole cause of the injury. But where the injury was the joint result of the negligence of the defendant railroad and of the plaintiff, there may be a recovery by the plaintiff, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to the employee. In briefs submitted to this court counsel for both the defendant in error and the plaintiff in error have urged that this first question is not involved in this case, under the pleadings and the evidence. But the question propounded is a question of law, and such as the Court of Appeals is authorized, by the act creating that court and defining its jurisdiction and

right to propound questions to this court, to ask instructions thereon; and where such a question is propounded, it is the duty of this court to answer it without looking to the record or pleadings and the facts to discover whether the question is there involved; though this court might decline to answer a question of law if it appears from the other questions propounded in connection therewith that it could not be involved in the decision of the case before the Court of Appeals.

2. This court can not undertake to answer the other three questions. After giving them careful consideration we are satisfied the questions are not of the character which the Court of Appeals is authorized to certify to this court. Question number 2 is a question of fact, and question 3 is a question of mixed fact and law, depending to a considerable extent upon the proper answer to question 2. Question 4 contains various mixed questions of fact and law. In the case of *Lynch* v. *Southern Express Co.*, 146 *Ga.* 68 (90 S. E. 527), it was said: "With a view of preserving uniformity of decision, the constitution provides for the certifying of constitutional questions to the Supreme Court, and further provides that 'The Court of Appeals may at any time certify to the Supreme Court any other question of law concerning which it desires the instruction of the Supreme Court for proper decision; and thereupon the Supreme Court shall give its instruction on the question certified to it, which shall be binding on the Court of Appeals in such case. The manner of certifying questions to the Supreme Court by the Court of Appeals, and the subsequent proceedings in regard to the same in the Supreme Court, shall be as the Supreme Court shall by its rules prescribe, until otherwise provided by law.' Constitution of Georgia, art. 6, sec. 2, par. 9 (Civil Code of 1910, § 6506). Two features stand prominent in this constitutional provision: one is that the question certified is to be one of law; and the other is that the purpose of the certification is to settle the question of law for application by the Court of Appeals in a 'proper decision' of the case by them. There can be no doubt that the words, 'question of law,' as used in the constitution, considered abstractly or in connection with the context, were not intended to embrace questions of fact, or mixed questions of law and fact; the manifest object being to submit to the Supreme Court a definite question of law." And in connec-

tion with this discussion the writer of the opinion, Presiding Justice Evans, referring to decisions rendered by the Supreme Court of the United States touching similar questions, said: "A similar question was presented to the United States Supreme Court in the construction of an act of Congress which authorized the judges of the Circuit Court of Appeals in any civil suit or proceeding before it, where they were divided in opinion, to certify to the Supreme Court the point upon which they so disagreed. The Supreme Court of the United States, speaking through Mr. Justice Gray, held that each question certified must be a distinct question or proposition of law clearly stated, so that it could be definitely answered without regard to other issues of law or of fact in the case. He said: 'The points certified must be questions of law only, and not questions of fact, or of mixed law and fact— "not such as involve or imply conclusions or judgment by the court upon the weight or effect of testimony or facts adduced in the cause." . . The whole case, even when its decision turns upon matter of law only, can not be sent up by certificate of division.' " Citing the following cases: Jewell v. McKnight, 123 U. S. 426 (8 Sup. Ct. 193, 31 L. ed. 190) ; Chicago &c. Ry. v. Williams, 205 U. S. 444, 452 (27 Sup. Ct. 559, 51 L. ed. 875) ; The Flomina, 212 U. S. 354 (29 Sup. Ct. 363, 53 L. ed. 546, 15 Ann. Cas. 748) ; U. S. v. Mayer, 235 U. S. 55 (35 Sup. Ct. 16, 59 L. ed. 129). The ruling made in the *Lynch* case, supra, has been followed in subsequent decisions by this court. The decision in that case was rendered under the provisions of the amendment to the constitution adopted in 1906, under which the Court of Appeals was created and established. The language of the amendment of 1906 allowing certified questions is as follows: "The Court of Appeals may at any time certify to the Supreme Court any other question of law concerning which it desires the instruction of the Supreme Court for proper decision; and thereupon the Supreme Court shall give its instruction on the question certified to it, which shall be binding on the Court of Appeals in such case." In the amendment to the constitution, adopted in 1916 (Acts 1916, p. 19), wherein the jurisdiction of the Supreme Court and of the Court of Appeals is defined, it was declared, that "where a case is pending in the Court of Appeals and the Court of Appeals desires instruction from the Supreme Court, it may certify the

same to the Supreme Court, and thereupon a transcript of the record shall be transmitted to the Supreme Court, which, after having afforded to the parties an opportunity to be heard thereon, shall instruct the Court of Appeals on the question so certified, and the Court of Appeals shall be bound by the instructions so given." The language of these two provisions as to the certification of questions to the Supreme Court for instruction is somewhat different, but we do not think it was the purpose of the legislature proposing this latter amendment to the constitution to change the character of the questions which might be certified to the Supreme Court. For, although the amendment of 1916 which we are considering declares that where a case is pending in the Court of Appeals and that court desires instructions from the Supreme Court it may certify the same to the Supreme Court, etc., that language must be considered and construed in connection with the further provision immediately following, which is, that the Supreme Court, "after having afforded to the parties an opportunity to be heard thereon, shall instruct the Court of Appeals on the question so certified." The language of the amendment of 1906 is substantially the same, which declares that "the Supreme Court shall give its instruction on the question certified to it." Therefore the decision in the *Lynch* case, which we have set forth at some length above, is as applicable now to the matter of questions certified by the Court of Appeals as it was when rendered. It follows from what is said above that this court can not entertain for decision and for the purpose of instructing the Court of Appeals thereon the last three questions.

*All the Justices concur.*