## HERRING *v.* STATE. ECHOLS *v.* STATE.

Where a warrant was issued on an affidavit charging a person with a crime, and that person was subsequently indicted for the offense charged in the affidavit, the party making the affidavit "being a witness for

Contempt, 13 C. J. p. 38, n. 32, 33, 34.
Resist, 34 Cyc. p. 1665, n. 48.

the State," it was contempt of court, under the provisions of the Civil Code of 1910, § 4643, for the accused to make to the father and brother of the witness statements intending that they should be communicated to the witness, where such statements naturally tended to coerce and were expected to coerce the witness so to change or modify his testimony that it might be more favorable or less hurtful to the defendant. And where another person was with the defendant when he made the statements referred to, and joined him in making the coercive statements, he also was guilty of contempt of court.

No. 6064. November 22, 1927.

Question certified by Court of Appeals (Cases Nos. 18088. 18103).

*Porter & Mebane,* for plaintiffs in error.

*James F. Kelly, solicitor-general,* and *M. Neil Andrews,* contra.

BECK, P. J. The Court of Appeals propounded to this court the following question, and desires instruction thereon as being necessary to a decision of the above cases: "Alfred Adkins swore out a warrant against Emmett Echols, charging him with a felony, and Echols was subsequently indicted for such felony in the superior court of Chattooga County, Alfred Adkins being a witness for the State. While the case was pending in court and before its trial, Emmett Echols and Monroe Herring went to the residence of Fillmore Adkins, the father of Alfred Adkins, and Echols said to Fillmore Adkins, in substance, that he (Echols) wanted him (Fillmore Adkins) to get his son, Alfred Adkins, to testify in court that the reason he had sworn out the warrant against him (Echols), and had stated that Echols was running a distillery, was because he (Alfred Adkins) had been scared into so doing by the officers. Monroe Herring, who was present and heard what Echols said to Fillmore Adkins, then said, in substance, to Fillmore Adkins: 'Unless your son does swear that, it will cause him more trouble.' Alfred Adkins was not present, and heard none of the above-stated remarks. However, a brother of Alfred was present and heard all that was said; and the statements of Echols and Herring were subsequently repeated to Alfred Adkins by his father and brother, but neither suggested what he should swear in the case nor advised him in any way about his testimony. Emmett Echols (upon the hearing of the charges of contempt of court against himself and Herring) testified in Herring's case, and stated in his own case that he went to Fillmore Adkins' house and talked with him as heretofore set forth,

because Alfred Adkins had previously told him (Echols) that the reason he had sworn out the warrant against him and had told the officers that he had made whisky was that he (Adkins) had been scared by the officers into so doing. This testimony of Echols was uncontradicted. Alfred Adkins did not testify in the contempt cases.

"1. Under the above-stated facts was the judge of the superior court of Chattooga County authorized to find that the conduct and acts of the two defendants, Echols and Herring, as heretofore set forth, amounted to a 'resistance' to the processes of the court, within the meaning of the provisions of section 4643 of the Civil Code of 1910? See, in this connection, *Powell* v. *State,* 152 *Ga.* 81 (2), 84 (2), 85, 86" (108 S. E. 464).

We are of the opinion that this question should be answered in the affirmative. In the case just cited it was said: "The bribing or attempting to bribe the witness who had been subpœnaed to appear against the sons of the respondent was opposing, striving against, or attempting to obstruct the processes of the court, and was intended to bring to naught and baffle such processes of the court, and therefore, in every respect, falls within the meaning given by the lexicographers to the word 'resist' as contained in § 4643 of the Civil Code of 1910, and should be given the meaning here ascribed to it in view of the context of the statute; though it would not necessarily be applicable to the term 'resist' as used in the Penal Code (1910), § 311, because there the act of resisting contemplated and denounced as criminal is one committed while the officer is in the act of executing or attempting to execute some process of the court." The definition of the word "resist," there held to be the correct definition of that term as used in § 4643, leaves no other conclusion open than that the conduct and acts of Echols and Herring, as set forth in the question propounded, amounted to a resistance to the processes of the court. It is true that in this case the defendants did not bribe or attempt to bribe a witness, but they did attempt to coerce a witness, or at least to bring strong influence to bear upon him which might affect his testimony in the case pending in the superior court. The witness whose testimony was thus sought to be affected was Alfred Adkins. The two defendants went to the house of Fillmore Adkins, the father of Alfred, and Echols said to Fillmore Adkins

that he (Echols) wanted him (Fillmore Adkins) to get his son, Alfred Adkins, to testify in court that the reason he had sworn out the warrant against him (Echols) and stated that Echols was running a distillery was because he (Alfred) had been scared into so doing by the officers. Monroe Herring then joined in with Echols, adopting what Echols had said, and added thereto by saying to Fillmore Adkins, "Unless your son does swear that, it will cause him more trouble." The threat may be somewhat veiled and vague, but it is patent that both Herring and Echols meant to bring pressure upon Alfred Adkins to prevent his testifying in a way to sustain the charge which he had made in the affidavit upon which the warrant against Echols was based. They did not make these threats directly to Alfred Adkins, but they made them to his father and in the presence of his brother. The court had the right to infer, and did no doubt infer, that it was the intention of these defendants that what they said to the father of the witness and in the presence of the latter's brother should be repeated to the witness himself, and that it should have the effect of causing him to change, or modify, or make more favorable to Echols the testimony which they apprehended would be given by him unless pressure was brought to bear on him. These statements (threats they might be called without any strain upon the meaning of that word) were repeated to Alfred Adkins by the father and brother. And it makes no material difference that neither the father nor the brother "suggested what he should swear in the case nor advised in any way about his testimony." They carried out the intention of these defendants who made the threats, that directly or indirectly the threats or the effect of the threats should be felt by the witness Alfred Adkins, and that his testimony should in some way be modified or changed as a consequence of these threats. It may be that under the ruling in the *Powell* case, if the father and brother of Alfred Adkins had never communicated the substance of the statements made by the defendants, the defendants would not be guilty as charged. But they did communicate them, and that completed the circuit,—the offense was complete. Therefore the first question propounded by the Court of Appeals relative to the facts stated is answered in the affirmative.

A second question is propounded, but it is expressly stated that

it is to be answered only in case a negative answer should be returned to the first question.

RUSSELL, C. J., dissents.

GILBERT, J. The question propounded by the Court of Appeals is one of mixed law and fact, requiring the court to draw inferences from the statement of facts submitted. As such, this court is not authorized to return answers. *Lynch* v. *Southern Express Co.,* 146 *Ga.* 68 (90 S. E. 527); *Louisville & Nashville R. Co.* v. *Hood,* 149 *Ga.* 829, 834 (102 S. E. 521); *English* v. *Rosenkrantz,* 150 *Ga.* 817 .(105 S. E. 613); *Washington Loan Co.* v. *Stanton,* 157 *Ga.* 885 (2) (123 S. E. 612). And see *Bull* v. *Carpenter,* 158 *Ga.* 360 (123 S. E. 614). The answer to the question as returned is correct.