•  18088.  HERRING *v.* STATE OF GEORGIA.
18103.  ECHOLS *v.* STATE OF GEORGIA.

"Where a warrant was issued on an affidavit charging a person with a crime, and that person was subsequently indicted for the offense charged in the affidavit, the party making the affidavit being a witness for the State, it was contempt of court, under the provisions of the Civil Code of 1910, § 4643, for the accused to make to the .father and brother of the witness statements intending that they should be communicated to the witness, where such statements naturally tended to coerce and were expected to coerce the witness so as to change or modify his testimony, that it might be more favorable or less hurtful to the defendant. And where another person was with the defendant when he made the statements referred to, and joined him in making the coercive statements, he also was guilty of contempt of court."

DECIDED JANUARY 7, 1928.

Contempt, 13 C. J. p. 38, n. 33.

Contempt; from Chattooga superior court—Judge Maddox. April 7, 1927.

*Porter & Mebane,* for plaintiffs in error.

*J. F. Kelly, M. Neil Andrews, solicitor-general,* contra.

LUKE, J. Herring and Echols were found guilty of the offense of contempt of court, and each brought a bill of exceptions to this court. This court propounded to the Supreme Court the following question: "Alfred Adkins swore out a warrant against Emmett Echols charging him with a felony, and Echols was subsequently indicted for such felony in the superior court of Chattooga County, Alfred Adkins being a witness for the State. While the case was pending in court and before its trial, Emmett Echols and Monroe Herring went to the residence of Fillmore Adkins, the father of Alfred Adkins, and Echols said to Fillmore Adkins, in substance, that he (Echols) wanted him (Fillmore Adkins) to get his son, Alfred Adkins, to testify in court that the reason he had sworn out the warrant against him (Echols), and had stated that Echols was running a distillery, was because he (Alfred Adkins) had been scared into so doing by the officers. Monroe Herring, who was present and heard what Echols said to Fillmore Adkins, then said, in substance, to Fillmore Adkins: 'Unless your son does swear that, it will cause him more trouble.' Alfred Adkins was not present, and heard none of the above-stated remarks. However, a brother of Alfred was present and heard all that was said; and the statements of Echols and Herring were subsequently repeated to Alfred Adkins by his father and brother, but neither suggested what he should swear in the case nor advised him in any way about his testimony. Emmett Echols (upon the hearing of the charges of contempt of court against himself and Herring) testified in Herring's case, and stated in his own case that he went to Fillmore Adkins' house and talked with him as heretofore set forth, because Alfred Adkins had previously told him (Echols) that the reason he had sworn out the warrant against him and had told the officers that he had made whisky was that he (Adkins) had been scared by the officers into so doing. This testimony of Echols was uncontradicted. Alfred Adkins did not testify in the contempt cases. Under the above-stated facts, was the judge of the superior court of Chattooga County authorized to find that the conduct and acts of the two

defendants, Echols and Herring, as heretofore set forth, amounted to a 'resistance' to the processes of the court, within the meaning of the provisions of section 4643 of the Civil Code of 1910?"

The headnote of the opinion rendered by the Supreme Court in answer to this question is adopted as the headnote of this opinion. For full opinion of the Supreme Court see *Herring* v. *State*, 165 *Ga.* 254 (141 S. E. 89).

*Judgments affirmed. Broyles, C. J., and Bloodworth, J., concur.*